James E. KENNET, Plaintiff,

v.

UNITED MINEWORKERS OF AMERICA, Defendants.

Civ. A. No. 1616–57.

United States District Court
District of Columbia.

May 16, 1960.

Warren Miller, Washington, D. C., on behalf of the plaintiff.

Edward L. Carey, and Charles L. Widman, Washington, D. C., on behalf of the defendants.

HOLTZOFF, District Judge.

This action involves the rights of beneficiaries of a welfare and retirement fund established under the auspices of the United Mineworkers of America, and more specifically, the extent and scope of judicial review of actions of trustees of the fund in passing upon applications for benefits under the fund.

This is the trial of an action brought by a former coal miner to establish his right to an old-age pension under the welfare and retirement fund created by the United Mineworkers of America. The case has been tried without a jury.

The plaintiff had applied for a pension, his pension had been granted and he received some payments for a comparatively short period of time. Subsequently, on further investigation, his pension was terminated. This action was brought, in effect, to set aside the decision of the trustees terminating the plaintiff's pension and seeking judgment establishing his right to a pension and judgment for past installments claimed to be due.

One of the outstanding social problems that has bothered mankind for centuries has been the plight of elderly people when they reach an age when they were no longer able to earn a livelihood. The average person, as he approached that age, looked with dread upon what the future held in store for him. It was only in our own times that a successful attempt was made to solve this problem on a large scale. This far-reaching step has been one of the great advances in our social life. Financial security in old age is something that mankind has sought but never achieved until recent years. This has been accomplished in part by the Social Security Act, 42 U.S.C.A. § 301 et seq. and in part by the establishment of individual welfare and pension funds.

Insofar as the ranks of labor are concerned, the Labor Management Relations, Act of 1947, Act of June 23, 1947, 61 Stat. 157, 29 U.S.C.A. § 186, authorized the establishment of welfare funds by employers for the sole and exclusive benefit of the employees of the employer and their families and dependents, either separately or jointly with the employees of other employers making similar payments. The Act provided that such payments might be made by the employer to a representative of the employees and were to be held in trust for medical or hospital care, pensions on retirement or death, compensation for injuries or illness, unemployment benefits, and similar purposes. The statute further provided that the detailed basis on which such payments were to be made was to be specified in a written agreement with the employer and, further, that the employees and employers were to be equally represented in the administration of that fund, together with such neutral persons as the two groups might agree upon.

Pursuant to this statutory authority, the operators of coal mines entered into an agreement with the labor union representing coal miners, known as the United Mineworkers of America, on March 5, 1950. This agreement is known as the National Bituminous Coal Wage Agreement of 1950. In general it prescribed with a considerable degree of particularity, the terms of employment that were to govern the employees of coal mines whose owners were parties to the agreement. Among other things it regulated the number of hours constituting a work day, the rate of wages to be paid to employees, and various other matters relating to conditions of employment. In addition, this agreement created a fund, known as the United Mineworkers of America Welfare and Retirement Fund of 1950. It provided that each operator was to pay into the fund a certain specified amount per ton of coal produced by him. The fund was to be operated by a Board of Trustees named in the agreement. It was further provided that certain payments were to be made for pur-

poses enumerated in the instrument. Among such purposes were benefits on account of retirement. The trustees were given authority with respect to questions of coverage and of eligibility, amounts of benefits, and the like, subject to the stated purposes of the fund and within the terms and provisions of the Labor Management Relations Act.

Acting pursuant to this agreement, the trustees of the fund promulgated a set of regulations entitled Resolution 20, governing the payment of pensions to members of the United Mineworkers of America. The pertinent provisions of these regulations relate to eligibility to a pension. Three requirements are contained in the regulations governing eligibility: first, the applicant for a pension must have been a member of the United Mineworkers of America who had completed twenty years of service in the coal industry on or after May 29, 1946; second, he must have attained the age of sixty-two on May 29, 1946, or earlier; and, third, he must have retired from the bituminous coal industry on or after May 29, 1946.

On May 2, 1949, the plaintiff, James E. Kennet, filed an application for a pension with the trustees of the fund. This application showed that the plaintiff had been employed in the coal industry from April 1901 until June 1931, and again from September 1948 to March 1949. On the face of the application the plaintiff came within the terms of eligibility and a pension was granted to him. Subsequently, an investigation was made by the trustees, who reached the conclusion that the last employment of the plaintiff in the coal industry claimed to have been between September 1948 and March 1949 was colorable and not bona fide and that, therefore, the plaintiff was not entitled to a pension. Accordingly, the pension was terminated and this suit was brought.

The first question to be determined is the nature of the rights of employees for whose benefit the fund was established and the scope of judicial review of decisions of the trustees of the fund. It

seems to be urged, in effect, that employees for whose benefit the fund was established have no vested rights in the fund and that the action of the trustees in granting or denying applications is final and is not subject to judicial review except for fraud or on the ground that their action is arbitrary and capricious. The Court does not agree with this contention and overrules it.

■ While the factual situation presented here may be regarded as somewhat novel because welfare funds established by labor unions are of recent origin, nevertheless, the law is sufficiently flexible and potent to be adjusted to new problems. We must look to the fundamental principles of law in order to determine these questions. In effect, we are confronted with a trust fund governed by three trustees and a large group of beneficiaries of the trust fund. One of the principal branches of equity jurisprudence has traditionally been the protection of the rights of beneficiaries of trust funds. A beneficiary of a trust fund is entitled and has always been entitled to have recourse to a court of equity to secure the proper performance of the duties of the trustees and his rights in the fund. Consequently, on this ground alone the Court would have the power to determine the plaintiff's legal rights in the fund and the correctness of the action of the trustees in denying him a pension.

■ There is another approach to this problem. Contrary to the argument of defendant's counsel, the payments made from the fund are not gifts or gratuities. The employer, in making payments into the fund, is not making a gift. This fund was established pursuant to a contract between the union and the employers governing the terms of employment. Payments into the fund are part of the compensation received by the employee over and above his weekly wages. The services rendered by him are the consideration for both his wages and his pension. Whether the rights of the employees be deemed to be vested or in-

choate is immaterial. They are legal rights. The employee who meets the test of eligibility has earned his pension as part of the compensation for his work over the required period and is not receiving a donation at the whim or choice of the trustees. The employee may be regarded as a third party beneficiary to a contract. The rights of third party beneficiaries to recover on a contract made for their benefit has been recognized in the District of Columbia, Marranzano v. Riggs Nat. Bank of Washington, D. C., 87 U.S.App.D.C. 195, 197, 184 F.2d 349.

█ The Court concludes, therefore, that recourse to judicial action may be had to enforce rights under this fund and in such an action the Court will review the legal rights of the plaintiff and determine whether any erroneous decision has been reached by the trustees on questions of law. It will also review, to a limited extent, decisions of the trustees on questions of fact; certainly whether there is any substantial evidence sustaining the decision on questions of fact. The Court would not go as far as to review the question whether their decision is contrary to the weight of evidence, but it will determine whether there is substantial evidence in the record as a whole sustaining their finding. Finally, and it is not denied that this may be done, the Court will review the question whether the action of the trustees is in any way arbitrary or capricious.

The views here expressed are supported by a very able opinion of Judge Pine in Hobbs v. Lewis, D.C., 159 F. Supp. 282, 286. Counsel for the defendant relies on a somewhat narrower expression found in an opinion of Judge Youngdahl in Ruth v. Lewis, D.C., 166 F.Supp. 346, 349. With due deference to the learned Judge who wrote the opinion in Ruth v. Lewis, the Court is unable to accept the narrow view of scope of judicial review but, as indicated, takes a broader view, as does also Judge Pine.

The trustees, as has been stated previously, some time after granting a pension, instituted an investigation to determine whether any error had been made by them. They reached the conclusion, as has been stated, that the alleged employment of the plaintiff from September 1948 to March 1949 was colorable and not bona fide. If that alleged employment is taken out of consideration, the plaintiff is not eligible to a pension since he then would not be a person who retired from the bituminous coal industry on or after May 29, 1946.

The facts are not in dispute. They were obtained as a result of the investigation and are not questioned at this time. In 1931, during the period of the depression, plaintiff found himself unable to continue in the coal industry and purchased a farm from which he made his living until 1948. In 1948, he together with two other persons acquired a small coal mine, which they operated for seven months, until March 1949, on a cooperative basis. There were no other employees but the three entrepreneurs. They worked their own coal mine and produced such coal as three persons might be able to do. They were paid no wages but at the end of each week, after paying expenses, they divided the balance of cash among the three of them. According to the testimony the weekly payment to each of the three amounted to between twenty and thirty dollars.

█ The Court is of the opinion that the finding of the trustees that this did not constitute bona fide employment within the terms of the trust agreement is supported by substantial evidence. It is not for the Court to determine the matter *de novo*, but even if the Court had the duty of deciding the matter *de novo* it would hardly be inclined to reach a decision different from that at which the trustees arrived.

█ The final question to be determined is whether the action of the trustees was arbitrary or capricious. One of the points that perturbs the Court in this matter is the fact that before the pension was terminated, upon the basis of the investigation, no opportunity was given to

the plaintiff to answer the charges or to submit evidence, either orally or in writing. To be sure, the formality of a court trial is not required. A formal hearing is not requisite. Naturally, it need hardly be said that constitutional provisions governing due process of law have no application to a private trust, but it is one of the basic rudiments of Anglo-American jurisprudence that a person should receive notice and an opportunity to be heard or submit evidence when his rights are at stake. The Court would reach the conclusion that the procedure here followed was arbitrary and it does feel that in future cases it should be modified as suggested. In this instance, however, this very vital defect has been cured because the evidence conclusively shows that subsequently to the action taken by the trustees, on application of the plaintiff, the latter was given an opportunity to submit evidence. This evidence was submitted by him, the trustees reviewed and considered it, and after such consideration determined to adhere to their original decision. Consequently, it cannot be said that the plaintiff was prejudiced by the faulty procedure here followed.

There is one question that has also perturbed the Court in respect to judicial review and that is whether a case such as this must be determined on the administrative file of the trustees or whether evidence dehors the record is admissible. This question need not be decided, however, since both sides offered evidence, without objection, and since the Court would have reached the same conclusion whether it were limited to the administrative record or extended to a consideration of the additional evidence.

Accordingly, the Court will render judgment dismissing the complaint on the merits.

A transcript of the Court's oral decision will constitute the findings of fact and conclusions of law.

Counsel may submit a proposed judgment.