Floyd GOMEZ, Appellant,

v.

John L. LEWIS, Josephine Roche and Henry Schmidt, Trustees of the United Mines Workers of America Welfare and Retirement Fund.

No. 17697.

United States Court of Appeals Third Circuit.

Argued June 13, 1969.

Decided Aug. 20, 1969.

Walter G. Stanton, Litke, Gettig, Flood & Geiser, Pittsburgh, Pa., for appellant.

Charles L. Widman, Welly K. Hopkins, Washington, D. C., Kenneth J. Yablonski, Washington, Pa., for appellees.

Before STALEY, FREEDMAN and ALDISERT, Circuit Judges.

OPINION OF THE COURT

STALEY, Circuit Judge.

This is an appeal from the grant of summary judgment to appellees by the District Court for the Western District of Pennsylvania. Appellant, Floyd Gomez, had instituted this action to review a decision by appellees, John L. Lewis, Josephine Roche and Henry Schmidt,[1] Trustees of the United Mine

---

1. Subsequent to the noticing of this appeal, Trustee Henry Schmidt resigned as trustee, effective February 28, 1969. Trustee John L. Lewis died on June 11, 1969.

Workers of America Welfare and Retirement Fund, that he was ineligible for the pension benefits for which he had applied.

The facts were stipulated by the parties in the district court and cannot be disputed here. Appellant is now 71 years of age, having been born in Puerto Rico on March 14, 1898. He came to the United States as a young man and in 1934 began to work in the bituminous coal industry as a miner and loader in the Western Pennsylvania area. He worked in various mines until 1944 when he acquired a partnership interest in a mining company.[2] This company employed from 8 to 22 men between 1944 and 1957. And even though he was one of three partners in the mining operation, appellant worked at the mine as a miner, loader, or tippleman and was a dues-paying member of the United Mine Workers of America. In 1957 appellant sold his interest in the mining company but continued to work at the mine until 1962 when he retired from the coal industry. On April 25, 1963, appellant applied to the United Mine Workers of America Welfare and Retirement Fund (hereinafter "Fund") for pension benefits. His application was denied for failure to meet the requirement of 20 years service as an employee in the coal industry within the 30 years immediately preceding the application for pension It was not until 1966 that the instant action was brought to compel the trustees of the Fund to award appellant a pension with benefits retroactive to 1963.

The Fund involved in this case was created by the terms of the Trust Indenture contained in the National Bituminous Coal Wage Agreement of 1950, executed by and between the United Mine Workers of America, a labor union, and operators of bituminous coal mines throughout the United States. The trust indenture was drawn to conform with § 302(c) (5) of the Taft-Hartley Act,[3] which required such funds to be in the form of trusts and be "for the sole and exclusive benefit of the employees of such employer, and their families and dependents." The Fund is financed from payments by signatory bituminous coal operators of a royalty on each ton of coal produced for use or for sale. Accordingly, the group of potential trust fund beneficiaries can only be drawn from the ranks of employees of signatory operators to the Coal Wage Agreement of 1950.

Responsibility for administration of the Fund was placed in a board of trustees consisting of one representative of the United Mine Workers of America, one representative of the coal operators, and one neutral selected by the other two. By the terms of the agreement, full authority was given to the trustees "with respect to questions of coverage and eligibility." It is stipulated that this authority gives broad discretionary powers to the trustees with regard to the administration of the Fund, including the power to change those regulations from time to time, and the power to interpret the regulations so adopted to

2. Paragraph 14 of the district court stipulation states:
   "That Plaintiff was connected with the operation and ownership of a mine as a partner of Dorg Mining Company in the coal industry from September 1944 through November 1957, and during that period of time Dorg Mining Company had employees disclosed in Paragraph 20 hereof."
   Paragraph 20, however, discloses that appellant was associated with a Harkleroad Coal Company from 1945 to 1946. One explanation for this discrepancy could be that the name of the Harkleroad Coal Company was changed to that of the Dorg

Mining Company in 1947. In any event, it was not disputed that appellant was connected with the ownership and operation of a coal mine from 1944 to 1957.

3. 29 U.S.C. § 186(c) (5). This section of the Act granted an exception to 29 U.S.C. § 186(a), which makes it "unlawful for any employer * * * to pay, lend, or deliver, or to agree to pay, lend, or deliver, any money or other thing of value—(1) to any representative of any of his employees who are employed in an industry affecting commerce * * *." See Arroyo v. United States, 359 U.S. 419, 79 S.Ct. 864, 3 L.Ed.2d 915 (1959).

determine who meets them and who does not. Given such broad authority, it is well settled that the trustees' decisions are subject to judicial correction only in cases where it can be shown that they have acted arbitrarily and capriciously towards those to whom their trust obligations run. Kosty v. Lewis, 115 U.S. App.D.C. 343, 319 F.2d 744, 747 (1963); Danti v. Lewis, 114 U.S.App.D.C. 105, 312 F.2d 345, 348 (1962); Pavlovscak v. Lewis, 190 F.Supp. 205, 209 (W.D.Pa., 1960), aff'd per curiam, 295 F.2d 39 (C.A.3, 1961). And since we are of the view that appellant was clearly ineligible for pension benefits under the regulations in existence when he applied for a pension in 1963,[4] the only contention of any substance here is that the trustees acted arbitrarily and capriciously in 1960 by not giving appellant sufficient notice of a forthcoming change in the regulations so that he could have had an opportunity to elect to retire before the new regulation took effect.

It appears that prior to 1960, the trustees, in computing the required 20 years of employee service in the coal industry, gave credit for periods of self-employment to coal miners who operated small coal mines. But it seems that in 1960 the trustees began to doubt the propriety of equating the status of an entrepreneur with that of an employee, see Kennet v. United Mine Workers of America. 183 F.Supp. 315, 318 (D.C.D.C., 1960), since the Taft-Hartley Act requires that funds paid into the Trust be used "for the sole and exclusive benefit of the *employees of such employer,* and their families and dependents." (Emphasis added.) It is stipulated that in order to comply with the terms of the Taft-Hartley Act, the trustees adopted a resolution on April 11, 1960, providing that no credit for coal industry service would be granted for periods that an individual was connected with the ownership, operation or management of a mine.[5] This change of policy in the administration of

4. As applied to appellant's situation, four requirements for pension eligibility have remained unchanged since 1953. In order to qualify he must have: (1) attained the age of 60 years or over at the time of his application; (2) completed 20 years service *as an employee of an employer* in the coal industry within the 30 years immediately preceding the trustees' receipt of his application; (3) retired from or ceased work in the bituminous coal industry following regular employment in a classified job as an employee of an operator signatory to the National Bituminous Coal Wage Agreement of 1950, as amended; and (4) been regularly employed in a classified job in the coal industry immediately preceding May 29, 1946.

As will be pointed out in the text, *infra,* the trustees, in 1960, amended the regulations so that credit could not be given for employee service under requirement (2) *supra,* for time spent in connection with the ownership, operation or management of a mine. The trustees found that during the 30-year period immediately preceding his application (April 25, 1933 to April 25, 1963) appellant spent only 16¼ years as an employee in the coal industry when he was not associated with the ownership and management of a coal mine. Since we do not think the trustees abused their discretion by so finding, their decision will be upheld.

More important, though, is the fact that appellant as much as admits that he was ineligible under the 1963 requirements, for in paragraph 11 of the stipulation, he states: "Plaintiff was connected with the operation and management of a coal mine for thirteen (13) years of the thirty (30) years' period immediately preceding the date of his application." Thus, by his own admission appellant is three years short of the necessary 20 years employment untainted by any ownership status.

5. In defining what shall constitute a year of employee service (see note 4, requirement (2)), the requirement was amended to read:

"* * * provided further that he was not a participant in nor in any way connected with the operation or management of a coal mine or coal operation, and was not the recipient of income, revenue, emolument, proceeds, gift or return from the operation or management of a coal mine or coal operation either directly or indirectly."

In his brief on this appeal appellant argues that the trustees did not amend the pension eligibility requirements to comply with the provisions of the Taft-Hartley Act. We, however, cannot permit him on appeal to renege on that to which he expressly stipulated in the district court.

the Fund was publicized in a letter to the members of the United Mine Workers of America dated June 28, 1960, and it became effective two days later on July 1, 1960.

Conceding that the two-day interval between receipt of notice and the taking effect of the regulation was an insufficient period for appellant to have applied for a pension, the question is whether the trustees acted arbitrarily and capriciously by not allowing a longer period of time before the regulation became effective. In arguing that they did, appellant relies heavily upon the authority of Kosty v. Lewis, 115 U.S. App.D.C. 343, 319 F.2d 744 (1963). There, the regulations in effect prior to January 29, 1953, stated that the minimum 20 years of employee coal industry service could have accrued during any period prior to the application for benefits. On January 29 the trustees changed the regulations to require that the 20 years' minimum service must have accrued within the 30 years immediately preceding the filing of an application. No notice of any kind was given to industry employees prior to the change. If

Kosty had retired before the change, he would have been eligible for pension benefits. When he retired after the change, his application for benefits was denied. The court held that the manner in which the trustees altered the regulations was arbitrary in that no grace period was afforded employees like Kosty to elect to retire and qualify for a pension before they became ineligible.

Aside from the factual differences between this case and Kosty,[6] we are not persuaded that the finding of arbitrary and capricious conduct reached there is called for here. In the first place, although the amendment to the regulations became effective on July 1, 1960, appellant did not retire until about two years later, on June 9, 1962, and he did not apply for a pension until almost three years later, on April 25, 1963. In the second place, appellant has stipulated that the trustees amended the pension requirements in order to comply with provisions of the Taft-Hartley Act. And although we need not pass on the legality of the pre-1960 requirements, we think it was at least reasonable for the trustees to conclude in 1960 that they were

6. In Kosty it was conceded that all other qualifications under the old regulations had been met and nothing remained to be done other than for the applicant to retire and file for his pension. In his reliance upon Kosty, appellant would have us concede that he would have met all qualifications under the pre-1960 regulations. We cannot do so. Appellant's contention that he would have been given credit for his years as a partner in the mining company under the pre-1960 regulations is mere speculation. The trustees concede that prior to 1960 credit was given to miners who operated a small mine and did all the actual labor themselves. In appellant's case, however, the mine was not a one-man operation. It employed 8 to 22 employees during the thirteen years of appellant's partnership. This strongly indicates an employer-employee relationship between the three partners and the other miners. Thus, we have considerable doubt that even under the pre-1960 regulations the trustees would have found that appellant qualified under requirement (2) set out in footnote 4, supra.

Furthermore, we likewise doubt that the trustees would have found that appellant met requirement (4) by being regularly employed in a classified job in the coal industry immediately preceding May 29, 1946. Appellant has stipulated that "the term 'classified service' as used in Trust Fund regulations is defined as a job classification of an employee in the bituminous coal industry." (Emphasis added.) District Court Stipulation, paragraph 28. There is no question here that immediately preceding May 29, 1946, appellant was one of three partners in the mining company. And if he could not be classified as an employee for purposes of requirement (2), he certainly could not be so classified for purposes of requirement (4). Cf. Kennet v. United Mine Workers of America, 183 F.Supp. 315, 318 (D.C.D.C., 1960), where the court held, albeit in 1960, that the activity of three individuals who worked their own coal mine and, after meeting each week's expenses, divided the balance of cash among themselves, was not bona fide employment within the terms of the Trust Agreement.

violating the Act by accrediting miners with employee service when they were, in fact, entrepreneurs. This decision having been made, did the trustees then have an obligation to commit what to them would have been further violations of the Act by affording all who might qualify under the pre-1960 requirements a sufficient period to come forward? We think not. In our view the trustees' fiduciary duty to the nation's miners does not require them to do that which they reasonably believe to be unlawful. Furthermore, it cannot be overemphasized that due to the nature of this Fund, dependent as it is on the fluctuations of the coal industry for income, great flexibility is needed for its management. Pursuant to their full authority to make and interpret regulations, the trustees amended the pension eligibility requirements in 1960, and provided that the change would be effective two days after notice thereof. The district court granted summary judgment for the trustees because it found that they were neither arbitrary nor capricious in acting as they did. We are in agreement that the district court did not err.

Accordingly, the judgment of the district court will be affirmed.