**SEAFARERS PENSION PLAN, Appellant,**

**v.**

**Claude M. STURGIS, Appellee.**

**No. 79-1841.**

United States Court of Appeals, Fourth Circuit.

Argued June 6, 1980.
Decided Sept. 8, 1980.

C. Arthur Rutter, Jr., Norfolk, Va. (John H. Klein, Breit, Rutter & Montagna, Norfolk, Va., on brief), for appellant.

R. Arthur Jett, Norfolk, Va. (Jett, Agelasto, Berkley, Furr and Price, Norfolk, Va., on brief), for appellee.

Before BUTZNER, Circuit Judge, HARRY PHILLIPS, Senior United States Circuit Judge, Sixth Circuit, sitting by designation and SPROUSE, Circuit Judge.

HARRY PHILLIPS, Senior Circuit Judge.

The defendant–appellant Seafarers Pension Plan, through its Trustees, challenges the order of the district court awarding disability pension benefits to plaintiff–appellee Claude M. Sturgis. The district court based its order on the verdict of the jury that the Trustees' denial of benefits was arbitrary and capricious. The Trustees argue they were entitled to summary judgment or a directed verdict. We affirm.

I

Appellee Sturgis worked from March 1947 to August 1972 as a dues paying member of the Seafarers International Union (the Union). During those years, he served as a cook, seaman or wiper on ocean going ships and various types of tugs. On August 10, 1972, while working on a barge tug for Columbia Marine in Cincinnati, Ohio, Sturgis suffered a leg injury that ended his seafaring career.

Following his injury, Sturgis underwent numerous examinations, corrective surgery and physical therapy, all without success. In December 1972, Dr. Gerald Brock examined Sturgis, attempted corrective surgery on the injured leg, and concluded Sturgis would not be able to return to sea duty. In February 1973, Sturgis applied for Social Security disability benefits, which were granted in August of that year. In December 1973, following a second unsuccessful operation in the Marine Hospital at Staten Island, New York, the United States Public Health Service declared Sturgis permanently unfit for duty.

Nevertheless, Sturgis continued to believe he would be able to return to duty.[1] He testified some of the physicians who examined him held out the hope that he might eventually recover. Sturgis continued his therapeutic exercises and ultimately showed some marginal improvement. This apparently prompted him to take a job with Allied Towing in August 1974. Within a week, however, Sturgis found he was unable to perform shipboard duties. At that point, he returned to the Marine Hospital at Staten Island. There doctors told him extensive and irreparable neurological damage was responsible for his leg's paralysis

---

1. Sturgis' belief apparently was based in part on his previous recovery from surgery in May 1965. At that time, Sturgis testified, doctors had removed about 70 per cent of his stomach and indicated he would not be able to return to sea duty. Six months later he had been able to go back to work.

and would prevent him from ever going back to sea.

Finally conceding the futility of his efforts, Sturgis applied to the Seafarers Pension Plan on September 17, 1976, for a disability pension. His application was rejected on the grounds he had had a four year break in service following his injury and had not worked at least 90 days in 1975, the calendar year preceding his application date.

Sturgis then filed this action in the United States District Court for the Eastern District of Virginia. His amended complaint alleged the denial of benefits violated § 302(c)(5) of the Labor Management Relations Act (LMRA), 29 U.S.C. § 186(c)(5), and other statutes. The defendant moved for summary judgment on the ground the Trustees had been required by the terms of the Plan itself to deny Sturgis' claim. District Judge John A. MacKenzie denied the motion, as well as the motions for a directed verdict and for judgment notwithstanding the verdict. He submitted the case to the jury which found for Sturgis on the question whether the Trustees' denial of benefits was arbitrary and capricious. Accordingly, Judge MacKenzie entered judgment awarding Sturgis disability benefits of $250 per month.

The Trustees have appealed to this court on the ground their actions were not arbitrary and capricious and, therefore, they were entitled to judgment as a matter of law.

## II

The Seafarers Pension Plan (the Plan) was created in 1961 pursuant to § 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5).[2] A trust fund was established as an entity independent of the Union to receive contributions from employers with whom the Union had collective bargaining agreements. A Board of Trustees composed of equal numbers of employer and union representatives administers the fund pursuant to the provisions of the trust agreement, or Plan. The Trustees have the power to supplement or alter the Plan's administrative regulations by simple majority vote without consulting the Plan's beneficiaries, the members of the Union. Additional or altered regulations are noted in the Union's newsletter and become binding on the Trustees, who have the fiduciary duty to administer the Plan "for the sole and exclusive benefit" of the beneficiaries. 29 U.S.C. § 186(c)(5).

Under the terms of the Plan, an employee may become entitled to pension benefits in either of at least two ways: by working until he reaches retirement age or by becoming permanently disabled before reaching retirement age. Sturgis' claim is for a disability pension.

According to regulations adopted by the Trustees:

> An employee shall be entitled to retire on a Disability Pension if he becomes totally and permanently disabled provided he has pension credits for at least 4,380 days of covered employment (12 years) and, provided further, he has accumulated at least 90 days of covered employment during the calendar year preceding his date of application and at least one (1) day of employment during the six months period immediately preceding such application.

There is no dispute that Sturgis is permanently and totally disabled nor that he worked at least 4,380 days in covered employment.[3] The question is whether the Trustees reasonably could require more in this case.

Trustee Carmine J. Bracco testified there were two reasons Sturgis' pension claim was denied. First, since he was injured in

---

**2.** *Section 302(c)(5) provides in relevant part:*

(5) with respect to money or other thing of value paid to a trust fund established by such representative, for the *sole and exclusive benefit of the employees of such employer*, and their families and dependents (or of such employees, families, and dependents jointly with the employees of other employers making similar payments, and their families and dependents); . . . .

**3.** In fact, the record discloses Sturgis worked 4,869 days in covered employment.

1972 and did not apply for a pension until 1976, he had not "accumulated at least 90 days of covered employment during the calendar year preceding his date of application and at least one (1) day of employment during the six months period immediately preceding such application." We shall refer to this as the ninety–and–one requirement. Second, Sturgis had run afoul of the Plan's break in service rule whereby an employee who works less than 90 days in covered employment for three calendar years in a row loses all his accumulated pension credits. Thus, although Sturgis previously had accumulated more than the requisite 4,380 days, his failure to work in covered employment during the years 1971–76 left him without any pension credits at the time he applied.

Sturgis argues these two requirements, at least as applied to him, are unreasonable. Pointing out he has been totally and permanently disabled since 1972, he argues he could not possibly have satisfied either requirement. Requiring the impossible, even by regulations applicable to all, is inherently unreasonable, Sturgis contends. Judge MacKenzie apparently agreed the regulations as applied to Sturgis were sufficiently questionable to present a jury issue.

The Trustees argue they acted pursuant to valid regulations that were adopted for a legitimate purpose. Specifically, Trustee Bracco testified the ninety–and–one requirement is designed to force a potential claimant to file his application within six months from the onset of his disability. The purpose of the break in service rule is to eliminate the so–called "intermittent seaman", the person who works a few years and leaves the industry. Both rules allow the Trustees to write off some potential claims, thereby increasing the accuracy with which the actuarial advisers can estimate the Plan's liabilities.[4] Accurate projections allow the Trustees to devote more of the Plan's assets to long term investments yielding a higher return, and the

resultant increased income inures to the benefit of the Plan's members. Thus, the Trustees argue, the two rules serve legitimate goals. Moreover, Sturgis' case is by no means unique; both rules have been applied in the past to deny pension benefits. All of this being so, the Trustees conclude their actions were reasonable as a matter of law and there was nothing for the jury to decide.

### III

We must decide whether a reasonable jury could have found the Trustees acted arbitrarily and capriciously in denying Sturgis' pension claim. See *Riley v. MEBA Pension Trust*, 570 F.2d 406, 412–13 (2d Cir. 1977); *Rehmar v. Smith*, 555 F.2d 1362, 1371–72 (9th Cir. 1977); *Johnson v. Botica*, 537 F.2d 930, 935 (7th Cir. 1976); *Gomez v. Lewis*, 414 F.2d 1312 (3d Cir. 1976). If we find both the rules themselves and their application to this case are reasonable, our inquiry is ended. We may not second guess the Trustees' discretionary judgments. *See Roark v. Boyle*, 439 F.2d 497, 499 (D.C. Cir. 1970) (*Roark II*). Applying this standard to the present case, we affirm the judgment awarding benefits.

### A

The break in service rule itself is a reasonable, although sometimes harsh, means of separating career seamen, for whose benefit the Plan was created, from intermittent seamen, who spend a few years in the industry and then go on to pursue other occupations. A seaman need work only twelve years in covered employment before the onset of his disability in order to be eligible for a disability pension. It is not inconceivable that some individuals might work a few years, leave the industry for thirty, and still return to covered employment for a sufficient number of years to become eligible for pension benefits. But for the break in service rule, the initial few years of service would represent a contingent liability for which the Trustees would have to account throughout the ensu-

---

4. In fact, Trustee Bracco testified the break in service rule was adopted in 1968 at the request of the Plan's actuaries.

ing thirty years. By following the three year cut off rule, the Trustees are able to devote the Plan's limited funds to more beneficial purposes.

The problem with applying the break in service rule to the facts of this case is that it distinguishes indirectly between individuals with identical service records and disabilities on the basis of whether, at the time they were injured, they happened to be working for an employer who was a signatory of the Union's collective bargaining agreement. The Regulations provide that where an individual is injured while working for a signatory employer, "periods of receipt of [temporary disability benefits] . . . will continue to accrue and be credited towards pensions." *See Rueda v. Seafarers International Union*, 576 F.2d 939 (1st Cir. 1978). Furthermore, such periods count as "covered employment", of which an individual must have at least 90 days in any year of each three year period to avoid a break in service that would cost him all his accumulated pension credits.

> 'Covered Employment' means employment for which the Employer is obligated to contribute to the Seafarers Welfare Plan, and for the *purpose of eligibility shall include* periods of time preceding the date when the Employer became so obligated, *periods of disability to the extent specified in the Regulations*, and periods during which employees participate in the Upgrading and Certifications Programs of the Maritime Advancement Programs, and/or the Harry Lundeberg School of Seamanship and its successor, . . . (emphasis added).

By contrast, an individual who happens to be working for a non–signatory employer at the time he is injured accumulates neither pension credits nor days of covered employment for purposes of the break in service rule.

As applied to Sturgis, this distinction was critical. From 1947 to 1970, a period of some 23 years, Sturgis worked almost exclusively for signatory employers. Had he been working for such an employer in 1972 at the time of his injury, he would have continued to accrue pension credits and days of covered employment until the U.S. Public Health Service declared him permanently unfit for duty in December 1973. Since he applied for a disability pension in September 1976, Sturgis would have had only a two calendar year lapse in his employment and the break in service rule would not have barred his claim. As it happened Sturgis was working for Columbia Marine, a non–signatory employer at the time of his accident.[5] Under the terms of the Plan, he received no credit toward his pension nor toward the break in service rule's covered employment requirement. His disability pension claim was barred by the break in service rule as early as 1974.[6]

The present situation is analogous to that presented by the signatory last employer requirement formerly imposed by the Trustees of the United Mine Workers of America Welfare and Retirement Fund of 1950. Beginning with *Roark v. Lewis*, 401 F.2d 425 (D.C. Cir. 1968) (*Roark I*), the District of Columbia Circuit heard a series of cases challenging the rule of the UMW Trustees that a miner was not entitled to a retirement pension, regardless of how many years he had worked for UMW signatory employers, unless he also worked his last year in the industry for a signatory employer. As the court pointed out in *Roark I*:

> If the Fund's purpose is to pay benefits to contributing employers' employees (whose work generated the contributions), it is difficult to see how such a requirement promotes that purpose. It makes employees like these appellants sacrifice an otherwise valid pension claim because they worked a relatively short time for non–contributing operators. The contributions which signatory operators made on their behalf did not evapo-

---

**5.** Sturgis claimed a Union official had asked him to take the job with Columbia Marine in order to attempt to unionize the employees. Sturgis said he had understood his time with Columbia would count toward his pension. Whether the Union made any such representa-

tions, and whether they would have bound the Plan's Trustees, is irrelevant to our analysis.

**6.** Sturgis had not worked 90 days in covered employment in either 1971 or 1972.

rate as a result of their later employment with non–signatories. 401 F.2d at 428. Ultimately, the court held the signatory last employer requirement arbitrary and capricious as applied to miners with substantial periods of signatory employment. *See Pete v. United Mine Workers of America Welfare & Retirement Fund*, 517 F.2d 1275 (D.C. Cir. 1975) (en banc); *Teston v. Carey*, 464 F.2d 765 (D.C. Cir. 1972); *DePaoli v. Boyle*, 447 F.2d 334 (D.C. Cir. 1971); *Roark II, supra; Collins v. United Mine Workers of America Welfare & Retirement Fund*, 439 F.2d 494 (D.C. Cir. 1970).

We hold the jury could have concluded it was arbitrary and capricious for the Trustees to apply the break in service rule to exclude Sturgis, an employee with 23 years of service with Union employers, solely because his last employer was not a Union signatory. As in the cases of the miners, the contributions Sturgis' former signatory employers had made on his behalf "did not evaporate as a result of [his] later employment with non–signatories." *Roark I, supra*, 401 F.2d at 428. Furthermore, that a potential claimant's last employer happened to have a contractual relationship with the Union at the time of the injury indicates nothing about whether he is an "intermittent seaman" or can be expected to assert a claim. The jury clearly was justified in finding such an unreasoning application of the break in service rule invalid.[7]

### B

Much of what we have said about the break in service rule applies to the ninety–and–one rule as well. Doubtless the rule has a legitimate purpose, to require potential claimants to file their applications within six months after they become disabled.

However, the jury reasonably could have concluded from the record evidence that the Trustees applied the ninety–and–one rule arbitrarily and capriciously to exclude Sturgis' claim solely because his last employer was not a Union signatory.

The Plan's regulations regarding disability related eligibility extensions treat the ninety–and–one rule somewhat differently than the break in service rule. A seaman who is injured while working for a signatory employer and who meets the ninety–and–one requirement at the time of his injury is entitled to have his eligibility under the rule extended for a maximum of 39 weeks. He must file his disability pension application within six months of the last day of the 39 week extension or on the day he is declared permanently unfit for duty, whichever is earlier. By contrast, an individual injured while working for a non–signatory employer gets no such eligibility extension.

The favored disability claimant can run afoul of the ninety–and–one rule. If the individual is not declared permanently unfit for duty before his extended eligibility period expires, the ninety–and–one rule theoretically bars his pension application. *See Rueda v. Seafarers International Union, supra*, 576 F.2d at 943 and n. 11.

Recognizing that the 39 week limit on the eligibility extension under the ninety–and–one rule may put some seamen in a "Catch 22 plight",[8] the Trustees follow an informal practice of waiving the ninety–and–one requirement for individuals who were injured while working for signatory employers. Trustee Bracco testified the ninety–and–one requirement may be waived for compelling reasons such as a claimant's physical inability to work.

7. A different question would be presented were Sturgis arguing he should have accumulated credit toward his pension for the period between his accident and the time the Public Health Service declared him permanently unfit for duty. It may be that signatory employers are obliged to contribute to the pension fund for their employees who are temporarily disabled. If so, a signatory/non–signatory distinction might be justified for purposes of accumulating pension credits. That question is not before us and we express no opinion thereon. We hold only that the Trustees cannot divest

Sturgis of his accumulated pension credits solely because his last employer was not a signatory.

8. *Rueda v. Seafarers International Union, supra*, 576 F.2d at 942. As the First Circuit pointed out, a seaman whose temporary disability status lasts more than 15 months (39 weeks plus six months) would not be found totally and permanently disabled by the time he should have applied for his pension; yet by waiting until found disabled he would be time barred from qualifying. *Id.*

Trustee Bracco denied there were compelling reasons to waive the requirement in Sturgis' case. Because his last employer was not a Union signatory, Sturgis had a break in service and lost all his pension credits. Therefore, waiving the ninety-and-one rule would have accomplished nothing.

Mr. Bracco's testimony shows clearly that the Trustees' mechanical application of the break in service and ninety-and-one rules caused them to deny Sturgis' pension claim solely because he happened to be working for a non-signatory employer when he was injured. As previously shown, had Columbia Marine had a collective bargaining agreement with the Union, Sturgis would not have had a break in service. A waiver of the ninety-and-one requirement then would have been possible and Trustee Bracco implied, likely:

Q. Mr. Bracco, I would like to go back to two things that were covered by plaintiff's counsel. Plaintiff's counsel asked you concerning waivers of the 90 and 1 rule given to people who are injured or disabled.

Did the trustees treat persons who have been disabled since their last day of signatory employment differently from persons who are disabled on either non-signatory employment or otherwise?

A. Oh, yes.

\* \* \* \* \* \*

Q. To give you a hypothetical, when a man is injured in covered employment and is continuously disabled, say for two, three years, and has been continuously disabled during that period of time and puts in a late application for disability benefits, would our hypothetical seaman have received favorable consideration in the application for the waiver of the 90 and 1 rule?

A. Yes.

Q. On the other hand, Mr. Bracco, the situation where the hypothetical seaman was not injured in covered employment and, therefore, did not receive credit for periods of disability since his last day of covered employment and also had waited

three years or four years or whatever before making application, would the trustees have granted a waiver in that man's case?

A. No, he wouldn't comply with the rules. The rules permit all of the things I have suggested, which would lead the trustees to grant the waiver.

It is difficult to see how this unreasoning application of the signatory/non-signatory distinction bears any relationship to the ninety-and-one rule's stated purpose of requiring timely applications. Under these circumstances we hold that the jury could have concluded from the evidence that it was arbitrary and capricious for the Trustees to distinguish between Sturgis and other similarly situated pension claimants based solely on the identity of his last employer.

The judgment of the district court is affirmed. Sturgis' prayer for attorneys' fees is denied.