Clarence HIGGINS

v.

CARPENTERS HEALTH & WELFARE FUND OF PHILADELPHIA AND VICINITY, et al.

Civ. A. No. 80–2856.

United States District Court,
E. D. Pennsylvania.

Oct. 19, 1981.

Joseph P. Briglia, Haddon Heights, N. J., for plaintiff.

William J. Einhorn, Sagot & Jennings, Philadelphia, Pa., for defendant.

## MEMORANDUM

GILES, District Judge.

### INTRODUCTION

This court has before it defendants' motion for summary judgment. The underlying action was commenced under section 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a), and was properly removed to this court. The removal petition filed by defendant states that removal is based upon diversity of citizenship. Since this action was commenced in Pennsylvania and defendant is a resident of Pennsylvania, removal was inappropriate on diversity grounds as stated. *See* 28 U.S.C. § 1441(b). However, removal is proper under 28 U.S.C. § 1441(b) as a civil action of which this court has original jurisdiction, founded on a claim arising under the laws of the United States. Because the pension plan is an integral part of a collective bargaining agreement, the breach of a section 301 contract has been alleged. Thus, federal jurisdictional prerequisites under section 301(a) are satisfied. *Rosen v. Hotel and Restaurant Employees & Bartenders Union*, 637 F.2d 592, 596 (3d Cir. 1981).

Basically, the complaint alleges that the pension trustees and health and welfare trustees who administered the pension and welfare plans in which plaintiff participated breached certain fiduciary duties allegedly owing to plaintiff and improperly denied plaintiff the benefits to which a vested participant would be entitled. Plaintiff essentially seeks either a determination by this court that he is entitled to pension benefits or an order compelling defendants to return to plaintiff all monies collected from employers on his behalf. Defendants have moved for summary judgment pursuant to Fed.R.Civ.Pro. 56(b), claiming that no genuine issue of material fact exists as to plaintiff's entitlement to benefits under the pension plan. It is defendants' position that plaintiff had insufficient credited service under the terms of the plan to be entitled to pension benefits and that, as a matter of law, defendants did not breach any fiduciary duties towards plaintiff.

For the reasons which follow, defendants' motion for summary judgment is granted.

### FACTUAL BACKGROUND

Plaintiff, Clarence Higgins is a carpenter and has been a member of the Metropolitan District Council of Philadelphia and Vicinity of the United Brotherhood of Carpenters and Joiners of America (hereinafter "Union") since 1937.

Defendants, Carpenters Health and Welfare Fund of Philadelphia and Vicinity, (hereinafter "Welfare Fund") and Carpenters Pension Fund of Philadelphia and Vicinity (hereinafter "Pension Fund") are trust funds that are created and maintained pursuant to the terms of a collective bargaining agreement between the Union and an employer association entitled the General Building Contractors' Association, Inc. Under the collective bargaining agreement, employers are required to make monthly contributions to both the Welfare and Pension Funds on behalf of each carpenter that works for the employer for the preceding month, based on the number of hours that each individual works in that month. Upon receipt of the employers' contributions, the Funds credit each individual with the number of hours reported. This "credited service" in turn ultimately determines that individual's eligibility for benefits provided by the Welfare and Pension Funds.

Both funds are governed by their respective Plan of Benefits (hereinafter "the Plan"). These documents, which are created by the Trustees of the Pension Fund and Welfare Funds, describe precisely what benefits are made available through the Funds and how an individual is to achieve eligibility for those benefits. The parties have agreed that the 1962 Pension Plan will govern for purposes of this summary judgment motion, even though the Plan has been subsequently amended.

From the inception of the Pension and Welfare Funds on May 1, 1962, an employee's eligibility for pension benefits has rested upon a specified period of "credited service." Essentially, an individual is given a year of "credited service" if he has engaged in "covered employment" for the requisite number of hours. "Covered employment" is employment for which the individual's employer is required by the terms of a collective bargaining agreement to make contributions to the Pension Fund on the individual's behalf. Section 3.3 of the 1962 Pension Plan required that an individual have 15 years of "credited service" in order to be eligible for pension benefits upon retirement at age 65. This was subsequently liberalized to require only 10 years of "credited service." The parties agree that plaintiff needed 10 years of credited service to be eligible for pension benefits upon his retirement. Although the vesting requirement was subsequently reduced, effective May 1, 1978, from 10 years to 5 years of credited service, plaintiff has not claimed to be eligible for this 5 year vesting requirement. To be eligible, an individual must have been an active participant of the work force at the time of the amendment or must have accumulated 400 hours of covered employment by the Plan year ending 4/30/80. It is undisputed that plaintiff was not a member of the work force on May 1, 1978, nor did he work in covered employment after that date.

The dispute, then, is whether plaintiff has sufficient credited service to meet the 10 year vesting requirement. Plaintiff's employment record is undisputed. From 1937 to 1954, plaintiff worked for an employer who had a contract with the Union. From 1954 to 1970, however, plaintiff became self-employed and, as an employer, hired several persons to work for him. Beginning in 1962, when the Pension Fund was initiated, he made contributions to the Fund, as an employer, on behalf of his employees, but made no contributions on his own behalf. Furthermore, as an employer, he had no collective bargaining agreement with the Union. Plaintiff claims that in 1962 he contacted the Pension Fund Administrators asking if he could make contributions for himself. He was told that, as an employer, he could not make contributions on his own behalf. From 1970 to 1975, plaintiff ceased self-employment and became a "covered employee" for Plan purposes.

In 1975, for health reasons, plaintiff retired at the age of 67½. In June, 1975 he wrote to defendants stating that he had 5 years of credited service and that he wished to make retroactive contributions for the years 1962 through 1970, to allow him to qualify for pension benefits. His request was denied. When he ultimately applied for pension benefits, he was found not to be entitled to them, since he did not have the

requisite 10 years of "credited service." The parties do not dispute that plaintiff has 5 years of credited service for the years 1970 to 1975. The dispute centers upon whether plaintiff has additional credited service.

Plaintiff claims that he has the requisite years of credited service based on his employment and Union membership prior to 1970. Alternatively, he claims that in 1962 defendants breached their fiduciary obligation: (1) by not advising him to incorporate so that he could make contributions to the pension fund on his own behalf and (2) by later refusing his request to make retroactive contributions to the Pension Fund.

Defendants have moved for summary judgment claiming that, under the express terms of the 1962 Pension Plan, plaintiff's Union membership and employment prior to 1970 cannot be credited towards accrual of pension benefits. Defendants also assert that, as a matter of law, they did not breach any fiduciary duty to plaintiff by not advising him to incorporate in 1962, since there was no fiduciary obligation to individually counsel plaintiff. Moreover, they claim that they could not have allowed plaintiff to make retroactive contributions in 1975 since to do so would compromise the Fund's integrity.

## LEGAL PRINCIPLES

Rule 56(c) of the Federal Rules of Civil Procedure requires the trial court to enter summary judgment whenever it appears from the record evidence that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. The moving party bears the burden of demonstrating that no material issues of fact exist. *Ettinger v. Johnson*, 556 F.2d 692, 696 (3d Cir. 1977). The non-movant's allegations, supported by affidavits or other evidence, must be taken as true, and all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Scott v. Plante*, 532 F.2d 939 (3d Cir. 1976), *Moorehead v. General Motors Corp.*, 442 F.Supp. 873, 875

(E.D.Pa.1977). Even viewing the record evidence in this case in the light most favorable to plaintiff, this court finds that there are no genuine issues of material fact and that summary judgment is required as a matter of law.

## DISCUSSION

For purposes of clarity, I will address separately each of plaintiff's claims for relief and will indicate in each instance, why summary judgment in favor of defendants is appropriate based on the undisputed facts of record.

A. *As a Matter of Law, Plaintiff is Not Entitled to Any Credited Service for the Plan Years Prior to May 1, 1962*

Plaintiff alleges that under the Pension Plan, service prior to May 1, 1962 is credited from the date of initiation into an affiliated local union; that he became a Union member in 1937 and remained a member through May 1, 1962; and that based on his Union membership and employment prior to 1970, he had over 20 years of credited service at the time the Pension Plan was created on May 1, 1962. Therefore, plaintiff claims he had a vested pension as of May 1, 1962.

The uncontradicted Affidavit of Robert L. Meyers establishes that upon the Pension Plan's inception on May 1, 1962, the Board of Administration granted past service credit only to those individuals who had worked in "covered employment" prior to May 1, 1962, (*i. e.*, employment under a collective bargaining agreement negotiated by the Union or one of its affiliates) *and* who were working in "covered employment" on May 1, 1962 at which time contributions to the Pension Fund on their behalf were commenced.

The undisputed facts show that on May 1, 1962 plaintiff was not working in "covered employment" within the meaning of the Pension Plan. Section 2.1 of the 1962 Plan makes clear that a person is entitled to credited service only for the period of time that he has been a "covered member." Sec-

tion 1.5 of the 1962 Plan, in turn, defines a "covered member" to mean a member of the bargaining unit for whom payments to the Pension Trust Fund are made by the Union or one of its affiliated locals.

A "member of the bargaining unit" is defined in section 1.10 of the 1962 Plan as:

[a] person who, at any relevant time, is engaged in, or is available for and seeking to obtain, and whose chief source of livelihood is, the type of work, within the geographic jurisdiction, *which, on May 1, 1962 was, or after that date is, covered by a collective bargaining agreement requiring payments by the employer to the Pension Trust Fund.* (emphasis supplied).

Thus, under the express terms of the Pension Plan, a person is granted past service credit only if that person was a "covered member" at the Plan's inception. To be a "covered member" a person must be covered by a collective bargaining agreement requiring payments by the employer to the Pension Trust Fund.

It is undisputed that between 1954 and 1970 plaintiff was an employer. Thus, on May 1, 1962, he was not engaged in the type of work which was covered by a collective bargaining agreement and which required payments by his employer to the Pension Trust Fund. It is also undisputed that Plaintiff, as an employer, did not enter into a collective bargaining agreement with the Union at any time.

Plaintiff does not contend that there is any ambiguity in the Plan provisions as set forth above. The plain meaning of the 1962 Plan provisions is that plaintiff had to be a "covered employee" on May 1, 1962 to be entitled to past credited service. Nowhere in the 1962 Plan is there any language indicating that past credited service is allowed simply for Union membership or for prior employment and plaintiff has not cited any Plan provisions which require a contrary interpretation. In fact, the uncontradicted evidence set forth in Mr. Meyers' Affidavit is that prior Union membership, of itself, is irrelevant to a determination of eligibility for pension benefits and that the

Board of Administration has consistently ruled that an individual may not be credited for service prior to May 1, 1962 unless the individual had been working under the terms of collective bargaining agreement negotiated by the Union or one of its local affiliates, and had been working in such covered employment on May 1, 1962.

The undisputed facts are that plaintiff was not working in covered employment on May 1, 1962. Therefore, as a matter of law, I find that plaintiff was not entitled to credited service for his Union membership and employment prior to 1970 and that he lacked the requisite 10 years of credited service to qualify for pension benefits upon his retirement in 1975.

Since I have found that plaintiff did not accrue credited service for his employment and Union membership in the years prior to 1970, I do not need to consider plaintiff's arguments that any break-in credited service was cured by his subsequent credited service from 1970–1975. In any event, this argument is without merit under the terms of the Plan. Because plaintiff was an employer who did not have a collective bargaining agreement with the Union or one of its affiliates, his break-in service is determined by reference to section 2.4(a) of the Plan. The Pension Plan provides, at section 2.5, that a section 2.4(a) break-in credited service cannot be cured by subsequent credited service. Thus, plaintiff's claim that any break-in credited service was cured falls of its own weight under the express provisions of the Plan.

B. *As a Matter of Law, Defendants Cannot Be Estopped From Relying On the Express Provisions of the 1962 Plan*

Alternatively, plaintiff asserts that even if the actual terms of the Plan do not permit past service credit for his Union membership and employment prior to 1970, he is entitled to it based on a statement contained in an informational booklet issued by the Pension Fund in May, 1968. This booklet described the highlights of the Pension Plan in lay terms and contained the statement:

Service prior to May 1, 1962 is credited from your date of initiation into a local Union affiliated with the Metropolitan District Council of Philadelphia and Vicinity.

Plaintiff claims that, since defendants published this statement, they must be estopped from awarding past service credit to individuals who were "covered members" on May 1, 1962.

 Principles of equitable estoppel are not to be applied lightly in cases involving pension benefits. *Rosen v. Hotel and Restaurant Employees, Inc.*, 637 F.2d 592, 598 (3d Cir. 1981); *Phillips v. Kennedy*, 542 F.2d 52, 55 n.8 (8th Cir. 1976). Nevertheless, courts have applied the law of estoppel in pension disputes, reasoning that the complex nature of the fund agreement and the relatively unfettered discretion of the trustees make it likely that workers will rely on promises made to them by the trustees. *Rosen v. Hotel and Restaurant Employees, Inc.*, 637 F.2d 592, 598 (3d Cir. 1981). The principles of estoppel are that (1) a representation of fact is made to a party; (2) the party relies on it with the right to so rely; and (3) the representation will result in injury or damage to the relying party if it is denied. *Id.* at 597.

 Applying these principles, the undisputed facts of record establish that plaintiff was not justified in relying upon the language in the 1968 booklet regarding credited service for Union membership. The booklet's introduction clearly states, in part,

"TO: ALL PARTICIPANTS! This booklet describes the highlights of your Pension Plan as it applies to *covered employees* who retire after May 1, 1968." (emphasis supplied).

One provision of a writing may not be read in isolation from other provisions. Rather, the writing must be interpreted as a whole. *Allen v. Atlantic Richfield Retirement Plan*, 480 F.Supp. 848, 850 (E.D.Pa. 1979), *aff'd w. o. opinion*, 633 F.2d 209 (3d Cir. 1980). The language quoted above can be fairly interpreted as a modification of all descriptions and explanations which follow. Therefore, the explanation of credited service upon which plaintiff allegedly relied must be read as applying to "Plan participants," *i. e.*, "covered members" as the phrase is defined in the Plan. Moreover, the 1968 informational booklet also states that it is written in non-technical language to make it easily understood and that if there is a difference between the highlights of the Plan as described in the booklet and the actual Plan provisions, the actual Plan provisions would necessarily govern.

In light of the qualifying language which was contained in the 1968 booklet, and which plaintiff does not dispute, I hold, as a matter of law, that plaintiff was not justified in relying on the statement regarding prior Union membership as set forth above. The booklet clearly pertains only to "covered employees," and plaintiff was not a covered employee. Thus, defendants are not estopped by the language in the 1968 booklet. They are entitled to rely upon the actual terms of the 1962 Pension Plan in denying past credited service to plaintiff for his employment and Union membership prior to 1970.

### C. As a Matter of Law Defendants Did Not Breach Any Fiduciary Obligation to Plaintiff

Since, in reviewing a motion for summary judgment, the court must view the evidence in the light most favorable to plaintiff, the court has credited plaintiff's assertion that he contacted the Plan defendants in 1962 about the possibility of making fund contributions on his own behalf and was told that an employer could not make contributions to the Plan for his own benefit.

 However, this court finds, as a matter of law, that there was no fiduciary obligation on defendants' part to individually counsel plaintiff, a non-participant in the Plan in 1962, to incorporate his sole proprietorship so that he could make contributions on his own behalf to the Fund. Plaintiff cites no authority for the proposition that a non-participant in the Plan is entitled to the kind of individualized counsel advocated by plaintiff. In fact, the cases suggest that

even if plaintiff were considered to be a Plan participant when he called in 1962, he would not be entitled to the kind of individualized attention he urges here. *Allen v. The Atlantic Richfield Retirement Plan*, 480 F.Supp. 848, 851 (E.D.Pa.1979), *aff'd w. o. opinion*, 633 F.2d 209 (3d Cir. 1980); *Shlomchik, v. Retirement Plan of The Amalgamated Insurance Fund*, 502 F.Supp. 240, 245 (E.D.Pa.1980). While the Fund trustees may have a duty to verify regularly the eligibility of Fund members and to advise them of possible ineligibility, or to take steps to cause employers to pay currently, *Rosen v. Hotel and Restaurant Employees & Bartenders Union*, 637 F.2d 592, 601 (3d Cir. 1981); *Phillips v. Kennedy*, 542 F.2d 52, 55 n.8 (8th Cir. 1976), there is no attendant obligation to advise non-participants or to create a scheme to convert an ineligible participant into an eligible one.

■ In any event, assuming *arguendo* that a fiduciary obligation did exist, there is no evidence of record that it was breached. When plaintiff called in 1962 he was informed that employers cannot make contributions to the Plan. I find from the 1962 Plan language itself that this was correct information and that employers were not eligible participants in the Plan. Section 2.4 of the 1962 Plan provides in relevant part that:

"(a) Notwithstanding the foregoing paragraphs 2.1 and 2.2, a Covered Member who, for more than a total of thirty (30) calendar days within any period of six (6) consecutive months, without the prior consent of the Board either takes employment at work within the Work Jurisdiction and within the Geographic Jurisdiction with any person, firm or corporation other than an employer having a collective bargaining agreement with the Council or one of its affiliated Locals, or subject to clause (b) of this paragraph 2.4, *engages in self-employment at work within the Work Jurisdiction and within the Geographic Jurisdiction either as an individual or as a partner or as a stockholder in a corporation*, shall be deemed to have a Break in Credited Service and

Credited Hours with respect to all time prior to the date of such employment or such self-employment shall be cancelled. (b) Any Member of the Bargaining Unit who becomes an employer of other Members of the Bargaining Unit pursuant to a collective bargaining contract with the Council or one of its affiliated Local Unions shall be entitled to no Credited Service and no Credited Hours for the period during which he is such employer and shall not be deemed to have suffered a Break in Credited Service except as provided in paragraph 2.3 hereof." (Emphasis supplied)

As this section of the plan makes clear, an employer, whether an individual, a partner, or a stockholder in a corporation, cannot receive credited service or any credited hours. Thus, when plaintiff telephoned the Fund office in 1962, he was given an accurate response. In spite of the language of section 2.4, plaintiff suggests that defendants should have advised plaintiff's wife to incorporate his business and to hold all the corporate stock so that the corporation could have made contributions on plaintiff's behalf. As I stated above, defendants had no fiduciary obligation to give business advice to a non-participant in the Plan. Moreover, such a scheme may well have been a fraud or sham upon the Fund. Plaintiff cannot seriously urge the trustees of the Fund to suggest a course of conduct which would be fraudulent and therefore a violation of their statutory duty to "... discharge [their] duties with respect to a plan solely in the interest of the participants and beneficiaries . . . ." 29 U.S.C. § 1104(a)(1).

Thus, as a matter of law, defendants committed no breach of fiduciary obligation to plaintiff by not advising him to incorporate his business in 1962. Plaintiff also alleged that he contacted the Board of Administrators in 1975 and was told, at that time, that he could have incorporated in 1962. Under the terms of the 1962 Plan, this statement by the 1975 Plan Administrator was incorrect and does not add to plaintiff's argument that defendants

breached a fiduciary obligation by failure to supply advice regarding incorporation in 1962.

 Similarly, plaintiff's argument that defendants breached a fiduciary obligation by denying plaintiff's 1975 request to make retroactive contributions to the Welfare and Pension Plans is incorrect as a matter of law. Plaintiff has cited no persuasive authority in support of his claim that an individual should be permitted to purchase full pension benefits by making retroactive payments. Pension trustees have broad discretion in administering the affairs of a pension plan. *Gomez v. Lewis,* 414 F.2d 1312, 1314 (3d Cir. 1969). Given this broad authority, the scope of judicial review of trustee's decisions is limited to whether the trustee's decision was arbitrary, capricious. *Id.*

It is clear beyond question that the trustee's refusal to permit plaintiff to make retroactive payments, which were neither owed nor accrued to the Fund, was not arbitrary and capricious and was well within their discretion. To permit individuals to obtain a pension under these circumstances would surely jeopardize and eventually destroy the fiscal integrity of the Fund. Plaintiff's arguments to the contrary run directly counter to the trustee's fiduciary obligations. Under the circumstances, plaintiff's claims that he was entitled to make retroactive contributions to the Fund must be rejected as a matter of law.

 Plaintiff's further argument that defendants breached a fiduciary obligation to plaintiff by not accurately explaining the terms of the Pension Plan in the 1968 informational booklet is likewise without merit. Once again, it is clear that defendants owed no such a duty to plaintiff who, in 1968, was not yet a Plan participant. However, even assuming the existence of a duty to describe fairly and accurately the contents of the Pension Plan to plaintiff, *Allen v. The Atlantic Richfield Retirement Plan,* 480 F.Supp. 848 (E.D.Pa.1979), *aff'd w. o. opinion,* 633 F.2d 209 (3d Cir. 1980), no facts have been set forth to indicate that there was a breach of that duty. As I discussed in Section B above, the language regarding credited service of which plaintiff complains was not inaccurate or misleading when read in conjunction with the booklet's qualifying introductory language. Thus, defendants are also entitled to judgment in their favor as a matter of law with regard to this aspect of plaintiff's claim of a breach of fiduciary duty.

### D. *As A Matter of Law, Plaintiff Is Not Entitled To Judgment On His Additional Claims*

 At a pretrial conference held between the parties on February 24, 1981, the parties agreed to narrow the issues for purposes of this summary judgment motion to those set forth above. However, plaintiff initially raised a number of additional claims, in his Second Amended Complaint. Specifically, plaintiff claimed that defendants failed to credit plaintiff's account with credited hours while he was recuperating from cataract surgery, and that as a result, he lost pension benefits. The uncontradicted affidavit of Mr. Meyers demonstrates that plaintiff's claim is without merit. Under the 1962 Pension Plan, an active employee is given 4⅔ credited hours for each day during which he receives accident and sickness benefits from the Welfare Fund or workmens' compensation. Plaintiff has not alleged that he was receiving weekly disability benefits from either source. Absent this evidence, plaintiff would not be entitled to credited service for his convalescence. In any event, it is clear that the 48 hours of credited service in dispute would not have affected plaintiff's eligibility for pension benefits since plaintiff had only 5 years of credited service and was 5 years short of the vesting requirement of 10 years. (See discussion in section A).

 In addition, plaintiff claimed that defendants discriminated against him in denying him pension benefits, since other individuals who also lacked the requisite number of years of credited service were allowed to collect pension benefits. The uncontradicted affidavit of Robert L. Meyers

states that no individuals were "grandfathered" into the Pension Plan unless they satisfied the requirements set forth by the Plan, *i. e.*, that they were working under the terms of a collective bargaining agreement negotiated by the Union and were working in such covered employment on May 1, 1962. Plaintiff also claims that the trustees acted arbitrarily and capriciously by failing to exercise their power to waive the technical requirements of the Plan in his case. As a matter of law, the trustees did not act arbitrarily and capriciously in refusing to waive the requirements of the Plan since plaintiff has presented no evidence of "good cause shown," which is required under the terms of the Plan, before he is entitled to a waiver.

Finally, plaintiff claimed that if he is ineligible for pension benefits, defendants have been unjustly enriched by the contributions made on his behalf during his years of credited service. He claims that the trustees are obligated to return these funds. Plaintiff's position is incorrect as a matter of law. Courts have permitted Pension Funds to retain contributions made by employers on behalf of an individual, even though he is subsequently found ineligible for pension benefits under the terms of the Plan. *See, e. g., Knoll v. Phoenix Steel Corporation*, 465 F.2d 1128 (3d Cir. 1972), *cert. denied*, 409 U.S. 1126, 93 S.Ct. 941, 35 L.Ed.2d 257 (1973); *International Union v. International Systems*, 566 F.2d 1135 (10th Cir. 1977). *Cf. Walsh v. Schlecht*, 429 U.S. 401, 97 S.Ct. 679, 50 L.Ed.2d 641 (1977); *Seymour v. Hull & Moreland Engineering Co.*, 605 F.2d 1105, 1115 (9th Cir. 1979). Notably, plaintiff has cited no dispositive authority in the context of Pension Funds, to support his unjust enrichment theory. Thus, I find plaintiff's position to be without merit and I find summary judgment in defendants' favor appropriate as to each of the additional claims raised by plaintiff's complaint.

## SUMMARY

For the foregoing reasons, defendants are entitled to summary judgment and judg-ment shall be entered in favor of defendants.