James J. REYNOLDS

v.

BETHLEHEM STEEL CORPORATION, et al.

Civ. A. No. M–83–115.

United States District Court, D. Maryland.

July 30, 1984.

John O. Hennegan and Romadka, Gontrum, Hennegan & Foos, Baltimore, Md., for plaintiff.

Douglas D. Connah, Jr., Barbara E. Schlaff, Elizabeth C. Honeywell and Venable, Baetjer & Howard, Baltimore, Md., for defendants.

## MEMORANDUM AND ORDER

JAMES R. MILLER, Jr., District Judge.

The plaintiff, James J. Reynolds, initiated this action against seven defendants [1] alleging, *inter alia*, violations of the Employee Retirement Income Security Act, 29 U.S.C.

---

1. The defendants are 1) Bethlehem Steel Corporation, plaintiff's employer; 2) The Pension Trust of Bethlehem Steel, the employee benefit plan; 3–5) Messrs. Dunbar, Burkley and Hanily, trustees of the pension plan; 6) The General Pension Board, administrator of the pension plan; 7) D.W. Kempken, Secretary to the General Pension Board.

§ 1132 (ERISA). Bethlehem Steel, one of the defendants, filed a motion to dismiss which was granted as to the common law breach of contract and fraud claims. This court determined that those claims were preempted by ERISA [2] (Paper No. 18).

The defendants (Paper No. 20) and the plaintiff (Paper No. 21) have filed motions for summary judgment to which each party has replied.[3] No hearing is necessary on the motions (Local Rule 6(E)).

## I. *Factual Background*

The plaintiff, an employee of Bethlehem Steel Corporation from May 12, 1942 to January 31, 1982, by virtue of his employment and participation in the pension plan, became entitled to certain benefits under the Pension Plan of Bethlehem Steel Corporation (The Plan). Under the terms of The Plan, an employee can, under certain circumstances, elect to receive a lump-sum payment at the time of retirement in lieu of periodic payments.[4]

Prior to retiring, the plaintiff filed an application for lump sum benefits. Under the terms of The Plan, "[a] lump sum payment may be made to [a] participant only ... if the application is accompanied by evidence, satisfactory to the General Pension Board of the good health of the participant ..." (Paper No. 5, Attachment, Pension Plan § 3.12). Mr. Reynolds had provided the appropriate medical documents at the time of his application (Paper No. 20, Kempken affidavit ¶ 24, and Ex. F). Those documents showed that Mr. Reynolds suffered from carcinoma of the vocal cord in 1977, but his doctor had stated he was in good health at the time of his application (Paper No. 20, Ex. F).

Mr. David Kempken, Secretary to the General Pension Board, sent the plaintiff's medical records for evaluation to Dr. John D. Bealer, Bethlehem's Corporate Medical Director (Paper No. 20, Kempken affidavit, ¶ 25). On December 12, 1981, Dr. Bealer informed Mr. Kempken that the plaintiff was not in good health [5] for the purpose of the lump sum pension payment (Paper No. 20, Ex. G). On December 23, 1981, the plaintiff received a mistakenly sent form letter stating his lump sum payment was approved (Paper No. 20, Ex. H).

On January 12, 1982, Mr. Reynolds applied for his pension (Paper No. 20, Reynolds Dep. at 59), and he retired on January 31, 1982 (Paper No. 20, Reynolds Dep. at 29). The error, granting his lump sum payment, was discovered during the processing of Mr. Reynolds' pension papers. He was notified by David Kempken on February 9, 1982, that based on the medical information he had submitted he was not in good health for the purposes of a lump sum pension distribution (Paper No. 20, Ex. I). That letter informed Mr. Reynolds that he could request review by the General Pension Board (Paper No. 20, Ex. I).

On February 17, 1982, he wrote to Mr. Kempken indicating his disagreement and attaching a copy of a letter from his physician stating that there was no evidence of cancer at the present time (Paper No. 20, Reynolds Dep. Ex. 7). The plaintiff requested a review of the lump sum payment decision.

Pursuant to Plan regulations governing resolutions of disputes of good health, (Paper No. 20, Ex. D, Lump Sum Regulations at 6–7), Mr. Kempken sent Mr. Reynolds' medical records to an independent agency,

---

**2.** Although only Bethlehem Steel filed a motion to dismiss the common law counts, such dismissal is applicable to all defendants.

**3.** Defendants' Reply (Paper Nos. 23 & 24); Plaintiff's Reply (Paper No. 22).

**4.** "A lump sum payment may be made to such a participant only if application therefore is made after the applicant has attained the age of 55 years, and if the application is accompanied by evidence, satisfactory to the General Pension

Board of the good health of the participant and the spouse, if any, of the participant." (Paper No. 20, Ex. A, Pension Plan § 3.12).

**5.** Under the terms of the pension plan, good health means "a state of physical and mental well-being from a medical point of view and includes the absence of disease or condition that, from a medical standpoint, may result in a significant shortening of life expectancy." (*See* Paper No. 20, Ex. B and Ex. C at 2).

Aetna Life Insurance Co., for review to determine eligibility for the lump sum payment (Paper No. 20, Kempken affidavit, ¶ 13).

On March 9, 1982, Dr. Malcolm Hunt of Aetna's Medical Department (Aetna) by letter informed Dr. John Bealer of Bethlehem's Medical Department that Mr. Reynolds did not qualify medically for the lump sum payment (Paper No. 20, Ex. L). Dr. Hunt's letter, however, requested further pathology and chemotherapy reports, a review of which "might result in allowing coverage ..." (Paper No. 20, Ex. L).

David Kempken then wrote to Mr. Reynolds requesting that he provide that medical information (Paper No. 20, Ex. M). The plaintiff's doctor submitted the requested pathology and chemotherapy reports to Kempken who forwarded them to Aetna (Paper No. 20, Ex. N).

Based on the additional medical information, Aetna again concluded that Mr. Reynolds was not eligible for lump sum payment (Paper No. 20, Ex. P).

On April 2, 1982, Mr. Kempken advised the plaintiff that he was not eligible for lump sum payment and that he would receive his pension in the regular monthly payments (Paper No. 20, Ex. Q). Soon thereafter, the plaintiff requested a detailed statement of the reasons for the decision that he was not in good health (Paper No. 1, Ex. H). Mr. Kempken responded that "for a further explanation as to the medical reasons for that determination you should have your personal physician write or phone Dr. J.D. Bealer ..." (Paper No. 1, Ex. I).

The plaintiff's doctor wrote to Dr. Bealer on April 28, 1982, requesting "favorable consideration of Mr. Reynolds ..." (Paper No. 1, Ex. J). That letter was answered by David Kempken indicating that Dr. Bealer had reviewed the information in the plaintiff's doctor's letter, but that it provided no reason to alter the decision to deny lump sum payment (Paper No. 1, Ex. K). The plaintiff's doctor again wrote to Dr. Bealer. This time he requested specific reasons

why Mr. Reynolds was considered to be not in good health (Paper No. 1, Ex. L).

Finally, plaintiff's counsel wrote to Mr. Kempken demanding the lump sum payment. In response to that letter, in October, 1982, Kathleen Mills, General Counsel for Bethlehem Steel, set forth the history of Mr. Reynolds' case and extended to Mr. Reynolds the option of reinstatement to employment without prejudice to his right to retire voluntarily at a time in the future (Paper No. 20, Attachment A to Memorandum). Mr. Reynolds declined that offer of reinstatement (Paper No. 20, Attachment B to Memorandum) and further declined to receive his monthly pension payments (Paper No. 20, Reynolds Dep. at 33–35).

## II. *Legal Analysis*

On cross motions for summary judgment, all parties assert that they are entitled to summary judgment on the issues of 1) whether the "good health" standard used by The Plan violates public policy; and 2) whether the denial of the lump sum payment was arbitrary and capricious. In addition, the plaintiff requests summary judgment on the basis of equitable estoppel. Finally, the defendants request summary judgment on the issues of whether Bethlehem Steel and certain other defendants are proper parties to this suit and on whether the ERISA notice requirements, 29 U.S.C. § 1133, are applicable in this action.

### A. *Public Policy*

█ The "good health" standard adopted by The Plan defines good health as "a state of physical and mental well-being from a medical point of view that includes the absence of a disease or condition that, from a medical standpoint, may result in a significant shortening of life expectancy." (Paper No. 20, Ex. B & Ex. C at 2 # 7). According to the defendants, The Plan adopted the good health standard as one method of assuring the fiscal soundness of The Plan.

"ERISA's purpose is to secure guaranteed pension payments to participants by insuring the honest administration of fiscal-

ly sound plans." *Pompano v. Michael Schiavone & Sons, Inc.*, 680 F.2d 911, 914 (2nd Cir.), *cert. denied,* 459 U.S. 1039, 103 S.Ct. 454, 74 L.Ed.2d 607 (1982). Reliance on actuarial assumptions in funding The Plan is required. *See* 29 U.S.C. § 1082(c)(3); H.R.Rep. No. 93–1280, 93rd Cong., 2d Sess., reprinted in 1974 *U.S. Code Cong. & Ad.News* 4639, 5038, 5065. The defendants aver that the good health standard was adopted based on actuarial assumptions built into the funding of The Plan (Paper No. 20, Kempken affidavit, at 2–3, ¶¶ 6 & 10). That standard prevents retirees who would not achieve the same longevity as the average Bethlehem pensioner, but whose shorter lives had been factored into The Plan funding method, from taking assets from The Plan which were not accounted for under the funding assumptions and thereby depleting The Plan's assets (Paper No. 20, Kempken affidavit at 2–3, ¶ 6).

Despite the plaintiff's contention that the good health standard amounts to "cold-blooded wagering on the part of The Plan" (Paper No. 21 at 6), and that it creates a discriminatory scheme, this court is convinced that the standard, on its face, does not violate public policy. In fact, it conforms to the purpose behind ERISA to secure fiscally sound plans.

In *Pompano v. Michael Schiavone & Sons, Inc.,* the Second Circuit noted the actuarial implications of granting lump sum payments indiscriminately: 1) Plan assets might have to be sold to pay lump sum amounts; 2) free availability could complicate long term investment strategy; 3) such payments could invalidate long term mortality assumptions. 680 F.2d at 915.

The requirement that a retiree demonstrate good health appears to this court to be related to the actuarial assumptions upon which The Plan funding is based and appears designed to contribute to the fiscal soundness of The Plan.

### B. *Application of the Standard as Arbitrary and Capricious*

The plaintiff asserts that the decision to deny Mr. Reynolds' lump sum payment request was arbitrary and capricious because: 1) the defendants first approved but then rescinded the lump sum payment; 2) the defendants failed to develop fully the evidence regarding the plaintiff's health; and 3) the evidence supported a finding of good health.

The plaintiff first argues that under The Plan's regulations he was required to elect, prior to retirement, whether he wanted a lump sum *or* monthly retirement payments. He states that in view of the fact that he could not rescind that election unilaterally, The Plan's unilateral rescission of its initial, erroneous approval of the lump sum payments was *per se* arbitrary and capricious. This court does not agree.

■ The Plan administrator, in this case the General Pension Board, has a fiduciary duty under ERISA to administer The Plan in accordance with the provisions set forth in The Plan document. 29 U.S.C. § 1104(a)(1)(D). One of those provisions is that no lump sum payments be made absent a finding of good health (Paper No. 20, Ex. A, Pension Plan § 3.12 at 24). Regulations adopted by the General Pension Board further define the procedures to follow in determining eligibility for lump sum payments (Paper No. 20, Ex. O). Under the regulations governing requests for lump sum payments, the Corporate Medical Director's opinion on good health "shall be deemed to be satisfactory to the General Pension Board." (Paper No. 20, Ex. D at 4). Thus the Board, on the recommendation of Dr. Bealer, the Corporate Medical Director, had determined on December 18, 1981, that Mr. Reynolds was not in good health (Paper No. 20, Ex. G).

■ David Kempken's letter of December 23, 1981 indicating that he had approved the application for lump sum payment (Paper No. 20, Ex. H) was contrary to the Board's decision. It was also a clerical error (Paper No. 20, Kempken affidavit, ¶ 26 at 6). Failure to correct the error would have been a breach of the General Pension Board's fiduciary duty to adminis-

ter The Plan according to its terms. Thus, correction of the error was not *per se* arbitrary and capricious. *See, e.g., Nass v. Staff Retirement Plan,* 515 F.Supp. 950, 990 (S.D.N.Y.), *aff'd,* 671 F.2d 492 (2d Cir. 1981).

■ Second, the plaintiff asserts that the decision made to deny Mr. Reynold's lump sum payment request was arbitrary and capricious, because the defendants failed to develop fully the evidence regarding the plaintiff's health.

The plaintiff asserts, and it is not disputed, that defendants' physicians never examined him or contacted his physician personally. But, as this court has detailed in the factual background of this case, the General Pension Board, its doctor, and Aetna reviewed the reports of plaintiff's own doctor and in fact asked for and received additional information from the plaintiff's doctor before reaching a final decision to deny the lump sum payment (*see supra,* Section I). In addition, Mr. Reynolds admitted in his deposition that there was no additional relevant medical information that he could have provided to The Plan (Paper No. 20, Reynolds Dep. at 43–44).

Thus, the plaintiff's own deposition testimony and the record before this court contradict the plaintiff's argument that the decision to deny the lump sum payment was made on an incomplete record.

■ Third, the plaintiff asserts that the decision to deny him lump sum benefits was arbitrary and capricious, because the evidence presented to The Plan supported a finding of good health. "To determine whether the action was arbitrary or capricious, [the court] must first decide whether the trustees' decision was supported by substantial evidence." *Horn v. Mullins,* 650 F.2d 35, 37 (4th Cir.1981). The court, if it finds that the trustees' decision is supported by substantial evidence, may not second guess the trustees' judgment. *Seafarer's Pension Plan v. Sturgis,* 630 F.2d 218, 221 (4th Cir.1980). It is the plaintiff's burden to prove that the trustees' actions were arbitrary and capricious. *See Bayles*

*v. Central States, Southeast and Southwest Areas Pension Fund,* 602 F.2d 97, 99 (5th Cir.1979).

■ The record reflects that in September 1977, Mr. Reynolds was diagnosed as having squamous cell carcinoma of the vocal cord. He began treatment of a full-course of radiation and Hydren in October, 1977. From December, 1977 to February, 1982 his checkups were all cancer negative (Paper No. 20, Ex. N). The record of his disease and apparent recovery were supplied to The Plan by Mr. Reynolds' physician, and it was on that information that Aetna based its non-eligibility decision which the Board accepted.

The medical information was evaluated by Aetna in accordance with the guidelines set forth in Aetna's "Manual of Medical Selection." The Manual contains a method of assessing the mortality risks associated with health-related factors (Paper No. 20, Kempken affidavit at 4, ¶ 14). It designated a range of "debit points" for various medical conditions (Paper No. 20, Kempken affidavit at 4, ¶ 15). A debit point total of over 150 requires a finding that the person is not in good health (Paper No. 20, Kempken affidavit at 4, ¶ 16).

In the case of Mr. Reynolds, Aetna first identified and coded the type of tumor as an M–2 tumor (Paper No. 22, attachment 3; and Kempken Dep. at 113–115). Next, Aetna applied the M–2 code to the Tumor Rating Table (Paper No. 22, attachment 4; and Kempken Dep. at 115). The Table yielded a special class (SRC) rating of 10 × 6. The SRC rating was then translated into debit points using the SRC Table (Paper No. 22, Ex. 2 & Kempken Dep. at 116). The debit points amounted to 180 (Paper No. 22, Kempken Dep. at 116).

It appears to this court that the debit point system was used accurately and the medical evidence applied correctly within the system. Thus, The Plan's finding that Mr. Reynolds was not in good health was supported by substantial evidence.

Clearly the plaintiff does not like the system adopted by The Plan, but this court,

having found that such a system does not violate public policy, concludes that the system was applied fairly in this case.

■ The plaintiff requests the court to look beyond the record and hear additional testimony of his physician regarding the plaintiff's good health. In effect the plaintiff is requesting *de novo* review of The Plan's decision. This the court cannot do. "A federal court is to focus on the evidence before the trustees at the time of their final decision and is not to hold a *de novo* factual hearing on the applicant's eligibility." *Wardle v. Central States Pension Plan,* 627 F.2d 820, 824 (7th Cir.1980), *cert. denied,* 449 U.S. 1112, 101 S.Ct. 922, 66 L.Ed.2d 841 (1981); *see also Carter v. Central States Pension Plan,* 656 F.2d 575, 578 (10th Cir.1981); *Phillips v. Kennedy,* 542 F.2d 52, 55 n. 10 (8th Cir.1976). Following the Fourth Circuit's admonition, this court will not second-guess the decision of the Board. *Seafarer's Pension Plan v. Sturgis,* 630 F.2d at 221.

## C. *Estoppel Theory*

The plaintiff argues, it seems, that even if The Plan's decision was not arbitrary and capricious, it should be estopped from denying the lump sum payment.

Mr. Reynolds asserts that he retired on January 31, 1982, in reliance on the payment of the lump sum retirement benefits, and that if he had known at that time that the lump sum payment would not be forthcoming, he would have elected to work until October, 1982, by which date he asserts he would have qualified under the defendants' criteria for good health.[6] He asserts that he has suffered financial harm as a result of the denial of the lump sum payment.

"The principle of estoppel permits recovery when 'a representation of fact made to

a party who relies thereon with the right to so rely may not be denied by the party making the representation if such denial would result in injury or damage to the relying party.'" *Haeberle v. Board of Trustees,* 624 F.2d 1132, 1139 (2d Cir.1980) citing 1 *Williston on Contracts,* § 139 at 600 (3rd ed. 1957) (pension case); *see also Traveler's Indemnity Co. v. Rosedale Passenger Lines, Inc.,* 450 F.2d 975, 977 (4th Cir.1971) (insurance case citing Maryland law).

The defendants argue that the plaintiff has failed to prove either element of equitable estoppel—reliance or harm.

From a review of Mr. Reynolds' deposition, it is unclear whether he relied on the representation. For example, this exchange occurred early in the deposition:

Q  Was this, in fact, your application to receive your pension as a lump sum payment?

A  Yes.

Q  What was the date on which you made that application? The date is on the letter. You can refer to the letter.

A  12/3/81.

Q  On 12/3/81 had you made a definite decision to retire on the date referred to in the initial sentence, which, I believe, was January 31st of 1982?

A  That's right.

Q  Why had you decided to retire on January 31st, 1982?

A  Because if I had waited after January 31st of 1982, the lump sum pension payment would have dropped as the months went by. In other words, they were cutting back the percentage.

Q  So, at that point you had decided to retire whether or not you got the lump sum payment?

A  Yes, I was going to retire.

---

**6.** It appears that the debit point system factors in the length of time a person has been cancer-free. The longer that span of time, the lower the debit point rating. Thus, it is true that if Mr. Reynolds had waited until it had been 5 years from the date of the tumor's removal, a debit point rating of 150 would have been assigned and he would have been eligible for the

lump sum payment (*see* Paper No. 22, Ex.'s 2, 3 & 4—Aetna calculation tables).

The tumor was successfully treated in December, 1977 (Paper No. 20, Ex. N). Thus, retirement in December, 1982 rather than January 31, 1982 might have yielded Mr. Reynolds the result he wished.

(Paper No. 20, Reynolds Dep. at 26–27). Later in the deposition he modified that statement by saying, "if I hadn't gotten the lump sum before, I probably would have stayed working, yes." (Paper No. 20, Reynolds Dep. at 35).

Although it is unclear whether Mr. Reynolds relied on the statement that the lump sum payment was approved when he made his initial decision to retire, it is clear that in October, 1982, when Bethlehem offered him an opportunity to return to work without prejudice to his right to retire voluntarily at some later time, his reliance on the lump sum approval ended. In his deposition Mr. Reynolds affirmatively answered the following question: "Was it your decision at that time [Oct. 1982] that you didn't want to go back to work whether or not you ever got the lump sum payment." (Paper No. 20, Reynolds Dep. at 49).

■ Therefore, assuming Mr. Reynolds relied at all on the erroneous approval of the lump sum payment, such reliance ended on October, 1982, when he decided not to return to work and "reactivate" the possibility of receiving the lump sum payment at a later time.[7]

■ The defendants also argue that Mr. Reynolds was not harmed, if in fact he did rely on the erroneous approval letter. Misleading a person to his prejudice or causing him to alter his position to his detriment is an essential element of equitable estoppel. *See, e.g., General Cigar Co. v. Lancaster Leaf Tobacco Co.,* 323 F.Supp. 931, 939 (D.Md.1971); *Southern General Insurance Co. v. O'Keefe,* 275 F.Supp. 107, 110 (D.Md.1967).

■ The plaintiff categorizes the harm he suffered as "financial difficulties" caused "by refusing to accept monthly pension payments for the duration of the litigation." (Paper No. 22 at 19). In his deposition he stated "I have had to use all of our savings to keep things going ... (Paper No. 20, Reynolds Dep. at 76). I am using all of my savings that I could have been getting interest on by them denying me this. I am just using up all of my money.... [I am also losing] the interest on my lump sum money." (Paper No. 20, Reynolds Dep. at 77).

Those statements are not helpful in determining the extent of harm, if any, suffered by Mr. Reynolds during the six months (April-October) he may have relied on the erroneous letter. Issues of fact remain as to the extent of reliance and the extent of harm. Summary judgment is not appropriate on the estoppel issue.

■ To clarify the issue of harm, it is the opinion of this court that if Mr. Reynolds was harmed by relying on the erroneous approval letter, the harm should be calculated only during the time span in which the reliance occurred. If reliance occurred, it occurred between January 31, 1982, the date of retirement, and October 1, 1982, the date Mr. Reynolds decided against reinstatement.

In addition, even if Mr. Reynolds had received the lump sum payment, that payment would not have been made to him until March, 1982. Therefore, the time span in which the harm can be calculated is April 1, 1982 to October 1, 1982.

### D. *Statutory Penalty*

■ The defendants request summary judgment on the issue of whether David Kempken, the Secretary to the General Pension Board, is liable for the statutory penalty of $100 per day for failure to supply certain information requested by a beneficiary of The Plan. 29 U.S.C. § 1132(c). The law requires every employee benefit plan to "provide adequate notice in writing to any participant or beneficiary whose claim for benefits under The Plan has been denied, setting forth the specific reasons for such denial, written in a manner calcu-

---

7. *See* note 6, *supra,* which explains how, at a later date, Mr. Reynolds could have been found

eligible for the lump sum payment.

lated to be understood by the participant."
29 U.S.C. § 1133(1).

The penalty provision states:

"(c) Any administrator who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper."

29 U.S.C. § 1132(c).

The plaintiff asserts that Kempken's failure to inform him at the time of the denial of the 180 debit point rating and of the procedure and medical data used to calculate that rating violated the notice of provision of the statute.

The Second Circuit considered the statutory notice provision in a lump sum payment case and decided that 29 U.S.C. § 1133 was not applicable. The court reasoned that "the thrust of [ERISA] is the safeguarding of benefits.... Neither the Act nor its legislative history comments on the mode or manner in which benefits should be paid." *Pompano v. Michael Schiavone & Sons, Inc.,* 680 F.2d at 916. The *Pompano* court held that a denial of a lump sum payment was not equivalent to the denial of benefits. "Rather it was only the requested *mode* of distribution of these benefits that was denied...." *Id.* at 915 (emphasis in original). "[T]he denial of the particular method of payment requested in

this case did not ... constitute a denial of a 'claim for benefits,' and thus did not necessitate written notice and fair review under either § 1133(1) or (2)." *Id.* at 916.

This court agrees with the *Pompano* decision and finds that, in this case, the statutory notice provision is not applicable,[8] and, therefore, the Secretary to the General Pension Board is not liable under the penalty provision of the statute.

### E.  *Proper Party to the Suit*

The defendant, Bethlehem Steel, seeks summary judgment on the issue of whether the General Pension Board and its Secretary, David Kempken, are agents of Bethlehem Steel. When this court ruled on Bethlehem Steel's motion to dismiss, it held that if a principal/agent relationship ultimately was proved, Bethlehem Steel could be considered a proper party to this action (Paper No. 18 at 7).

Those courts which have considered whether an employer is a proper party in a suit such as this one, brought pursuant to 29 U.S.C. § 1132, look first to whether an administrator of the pension plan has been appointed. If so, the administrator is the proper party, not the employer, unless the employer has controlled or influenced the administrator's decisions in regard to awarding pension benefits. *See, e.g., Crawford v. Armour Co. Salaried Pension Plan,* 3 EBC 2335, 2337 (W.D.Pa. 1982) (Paper No. 9, attachment); *Foulke v. Kempken,* No. C82–1220A, slip op. at 3 (N.D.Ohio 1982) (unpublished) (Paper No. 5, attachment); *Boyer v. J.A. Majors Co. Employees Profit Sharing Plan,* 481 F.Supp. 454, 458 (N.D.Ga.1979).

An administrator, the General Pension Board, has been appointed for The Plan. Therefore, the plaintiff herein must

---

8. In *Pompano* the court did not "imply that the form which payment takes may never be such as to constitute a substantive denial of ERISA benefits." 680 F.2d at 916. In this case, as in *Pompano,* the plaintiff clearly is entitled to benefits and will receive pension benefits. That Mr. Reynolds disputes the mode of payment does not implicate the statutory penalty provi-

sion. He, in fact, was given notice of the denial, the reason for the denial, and an opportunity to challenge that decision administratively (Paper No. 20, Ex. I). Even if the statutory penalty provision applied in this case, it appears that adequate notice was given in compliance with 29 U.S.C. § 1133.

show that, through an agency relationship, Bethlehem Steel influenced or controlled the Board's decision to deny him the lump sum payment.

Defendant Kempken avers that only he and the General Pension Board were responsible for the pension decision challenged herein (Paper No. 20, Kempken affidavit, ¶ 36). At his deposition he described the relationship between Bethlehem Steel and the General Pension Board.

Although Bethlehem Steel sponsors and funds the pension plan, (Paper No. 20; Ex. C to Memorandum, Kempken Dep. at 85), The Plan is administered by the General Pension Board. The Board's duties include establishing rules and regulations, determining eligibility and authorizing payment of benefits. (*Id.* at 86–87). Mr. Kempken is an employee of Bethlehem Steel and some members of the General Pension Board are employees of Bethlehem Steel. (*Id.* at 87–89). In addition, the Bethlehem corporate medical department makes the initial decision on "good health" (Paper No. 32, Kempken Dep. at 69–70).

The plaintiff asserts that those facts prove that the General Pension Board and its Secretary were agents of Bethlehem Steel and as such Bethlehem Steel exerted influence and control over the Board's decision not to award the lump sum payment. This court does not agree.

Initially, the court notes that Aetna, an independent agency, recommended to the Board the final decision to deny Mr. Reynolds the lump sum payment. Although it is unclear whether the General Pension Board or Bethlehem Steel paid for Aetna's services, (Paper No. 22, Kempken Dep. at 35), the plaintiff has not disputed the independent contractor status of Aetna.[9] Therefore, the Board's ultimate decision to deny the lump sum payment was not influenced by Bethlehem Steel.

As to the argument that Bethlehem employees provide services to The Plan, this court notes that under The Plan the General Pension Board is required to make decisions regarding the award of benefits. Although Bethlehem's medical director may make the initial recommendation to grant or deny the lump sum payment, it is the Board which reviews and accepts or rejects that decision (Paper No. 20, Ex. A., Pension Plan § 7.1; Ex. D Plan Regulations at 3–4). The plaintiff has produced no evidence to indicate that the Board was unduly influenced or controlled by Bethlehem when it accepted the initial determination of the medical director that Mr. Reynolds was not in good health.

Finally, as to the facts that Bethlehem employees sit on the Board and that David Kempken is a Bethlehem employee, it is clear that ERISA allows an employer to name the fiduciaries of The Plan. 29 U.S.C. § 1102(a)(2). "A named fiduciary may be a person whose name actually appears in the document, or may be a person who holds an office specified in the document, such as the company president." H.R.Conf.Report, No. 93–1280, 93rd Cong., 2d Sess., reprinted in 1974 *U.S.Code Cong. & Ad.News* at 5078. Thus, Congress recognized that named fiduciaries could wear two hats.

Congress, to protect beneficiaries and participants of The Plan, built into the law very specific fiduciary duties which the named fiduciaries must perform. *See* 29 U.S.C. §§ 1104, 1105, 1106, 1109. Criminal penalties may be imposed, 29 U.S.C. § 1131, or civil actions may be brought for violations of a fiduciary's duties. 29 U.S.C. § 1132.

The plaintiff does not argue that the General Pension Board is illegally constituted. This court will not conclude that the fact that the Board members and the Secretary are employees of Bethlehem Steel leads to the conclusion that they acted as agents of Bethlehem Steel, under the influence and control of the employer, when

---

**9.** At his deposition, Mr. Kempken stated that there was no relationship between Aetna and Bethlehem Steel and that Aetna was paid $30.00 per review unless there were extenuating services requiring a higher fee (Paper No. 22, Kempken affidavit at 35).

they decided to deny Mr. Reynolds the lump sum payment.

 Three trustees of the Pension Trust also request summary judgment on the proper party issue. Mr. Kempken averred that the trustees played no part in the decision to deny Mr. Reynolds the lump sum payment (Paper No. 20, Kempken affidavit ¶ 36).

Under The Plan, the trustees appear to manage and control the assets for the benefits of the participants (Paper No. 20, Ex. A §§ 8.1 & 8.2), and the General Pension Board administers the day to day operation of The Plan and makes the final decision as to whether to award or deny lump sum payments (Paper No. 20, Ex. A, § 7.1).

The plaintiff has set forth no facts that establish that the trustees had any input into or any power to make the decision to deny the lump sum payment. Therefore, they will be dismissed as defendants in this suit.

Accordingly, it is this 30th day of July, 1984, by the United States District Court for the District of Maryland, ORDERED:

1. That plaintiff's motion for partial summary judgment (Paper No. 21) is DENIED.

2. That defendants' motion for summary judgment (Paper No. 20) is GRANTED.

3. That the following are dismissed as defendants in this suit: Bethlehem Steel Corp. and Trustees Dunbar, Burkley and Hanily.

4. That the only remaining issue for adjudication is the equitable estoppel issue.