**Robert P. ROSSI, Plaintiff,**

v.

**BOSTON GAS COMPANY, Defendant.**

**Civ. A. No. 88–0079–Y.**

United States District Court,
D. Massachusetts.

Sept. 24, 1993.

Matthew J. McDonnell, Quincy, MA, for plaintiff.

Lawrence E. McCormick, Boston Gas Co., Boston, MA, for defendant.

## MEMORANDUM AND ORDER

YOUNG, District Judge.

This case arises under 29 U.S.C. § 1144(a), the Employee Retirement Income Security Act of 1974 ("ERISA"), with jurisdiction additionally predicated on 28 U.S.C. § 1332(a).[1]

### I.  FACTS AND PRIOR PROCEEDINGS

#### A.  Procedural History

The plaintiff, Robert P. Rossi ("Rossi"), filed this action against his former employer, the Boston Gas Company ("Boston Gas"), on January 11, 1988, alleging violation of ERISA, 29 U.S.C. § 1001 *et seq.* In its Answer to the Complaint, Boston Gas denied Rossi's allegations and urged the Court to dismiss the Complaint pursuant to Fed. R.Civ.P. 12(b)(6) because the requisite privity of contract does not exist between Rossi and Boston Gas.[2]

Neither party pursued this case beyond basic pleading for the first three years. Then, when Boston Gas moved to dismiss, Rossi moved to amend his complaint to add Boston Gas Company Union Employees' Pension Plan ("the Plan") as a defendant. At an April 3, 1991 hearing, the Court allowed the motion to amend and the parties agreed that the motion to dismiss might be treated as a motion for summary judgment. The Court granted Rossi a continuance pursuant to Fed.R.Civ.P. 56(f) to oppose the newly minted motion for summary judgment.

Thereafter, Rossi neither served the amended complaint on the Plan[3] nor

---

1. The Complaint was filed January 11, 1988, at which time the required amount in controversy was $10,000. Subsequently, the required amount in controversy was raised to $50,000. 28 U.S.C. § 1332(a) (1976), amended by 28 U.S.C. § 1332(a) (1988).

2. Boston Gas raised the following additional affirmative defenses in its Answer: 1) that Rossi's own participation in the transactions gave rise to his alleged damages, and 2) that the statute of limitations had run. Boston Gas did not pursue these defenses in subsequent pleadings.

   Boston Gas continues to maintain that the Complaint is barred by laches. In view of this Court's disposition of the motion to dismiss, however, the matter of laches need not be further considered.

3. As will be seen, it is this mis-step that is fatal to Rossi's hopes herein. The failure to serve the Plan with a copy of the Amended Complaint

adequately opposed the motion for summary judgment. On November 8, 1991, this Court denied Boston Gas' Motion for Summary Judgment without prejudice to its renewal upon a more complete record. At a pre-trial conference held January 31, 1992, this Court and counsel for Rossi and Boston Gas decided that counsel would file an agreed statement of facts, whereupon the Court would resolve the case upon the papers as a case stated.[4]

## B. Factual History

The facts of this case, having spanned a number of years, are long and complicated,[5] but since the Court is disposing of the matter on procedural grounds, no more than a bare minimum need be recounted.

In May, 1982, chronic lower back pain forced Rossi to retire from Boston Gas after 21 years employment. Pursuant to the disability retirement option he selected, Rossi, a Plan member, began receiving a monthly pension check in the amount of $369.43 and an additional allowance ("Additional Allowance") of $679.00 to supplement his pension. This Additional Allowance approximated Rossi's anticipated monthly benefit from the Department of Health and Human Services Social Security Administration ("Social Security"). The Plan would continue paying Rossi the Additional Allowance until he began receiving Social Security or died, whichever occurred first.[6] Rossi received the Additional Allowance from June, 1982 through and including June, 1984.

While still receiving his monthly pension and Additional Allowance, Rossi applied for Social Security benefits. On or about January 13, 1984, he received a letter from Social Security stating that his application for disability benefits had been approved, retroactive to November 1982. On or about May 7, 1984 Rossi was awarded Social Security benefits. In June 1984, Rossi, his wife, and his children, received a retroactive lump sum Social Security award covering the period from November 1982 through March 1984, totaling $10,995.70—$7883.95 payable to Robert P. Rossi; $2074.50 payable to Robert P. Rossi for his children; and $1037.25 payable to Philomena Rossi, his wife.

In July 1984, as a result of an internal audit, the Plan became aware that Rossi was

---

precludes its being considered a party to this action; it has not had adequate notice to defend, *no attorney has come forth as its counsel*, it has failed to file an Answer or any other papers with this Court and, most significantly, it has not signed the stipulated facts, *see infra*, which authorize the Court to decide the case stated. This Court cannot enter a judgment as to a defendant who has neither been served nor been made a party to such stipulation.

The Court makes this determination in the interest of justice, noting that this case would raise various novel issues had the Plan properly been made a party. These include: whether a deferential or *de novo* standard of review would apply; whether an Additional Allowance providing supplemental retirement income is a pension or a welfare benefit; whether the non-forfeiture provision of ERISA applies to such a benefit; whether Plan provisions become frozen as to a disabled retiree; whether modifications could have been reasonably anticipated by a disabled retiree; whether there exists a basis for assessment of interest; whether "receipt" of social security benefits means "in hand;" whether recoupment should equal the actual amount received from Social Security or the amount of overpayment by the Plan; and whether money received by Rossi's wife and by Rossi for his children should be included in the offset.

4. A case stated arises where parties stipulate, in writing, to material facts, enabling the court to render a decision without trial. This procedural device is especially appropriate where a district court is faced with cross motions for summary judgment. *Continental Grain Co. v. Puerto Rico Maritime Shipping Auth.*, 972 F.2d 426, 429 n. 7 (1st Cir.1992) (citing *Boston Five Cents Sav. Bank v. Dept. of Housing*, 768 F.2d 5, 11–12 [1st Cir. 1985] ). Unlike a motion for summary judgment, however, in a case stated the parties authorize a court to decide any significant issues of material fact or disputed factual questions that remain. Cross motions for summary judgment do not allow a court such latitude. *Boston Five Cents Sav. Bank v. Dept. of Housing and Urban Development*, 768 F.2d 5, 11–12 (1st Cir.1985).

5. Rossi and Boston Gas have submitted written stipulations of fact. For the purposes of this decision, this Court adopts as findings of fact all of the facts stipulated therein.

6. *See* Article 6.03 of the Plan as amended January 1, 1980 through present. The Plan will also terminate an Additional Allowance if an "employee is eligible upon proper application to receive unreduced Social Security Benefits under the Social Security Act." *See id.* Neither party has addressed this seemingly exceedingly relevant condition for termination.

receiving monthly Social Security benefits. Thereafter, Rossi's attorney notified the Benefits Coordinator of Boston Gas that Rossi's Social Security benefits had commenced. Since Rossi received a retroactive Social Security award, the Plan took the position that Rossi had begun to receive benefits effective November 1982. Accordingly, the Plan concluded he was ineligible for, and not entitled to retain, the Additional Allowance paid to him since his benefits began. On July 27, 1984, Boston Gas informed Rossi that, in accordance with the terms of his chosen retirement option, his monthly Additional Allowance would cease immediately.

On August 27, 1984, the Plan, acting in response to the retroactive lump sum Social Security award, requested that Rossi return $13,580 ($679 per month × 20 months, covering the period from November 1982 to June 1984) in Additional Allowance overpayment. Rossi was informed that these payments "duplicated" his Social Security benefits for the period covering November 1982 through June 1984. Over the next year, the Plan repeated its request and warned that if necessary it would reduce Rossi's monthly pension and assess interest charges retroactively and prospectively as a means of recovering overpayment. Rossi did not respond to the Plan's requests that he pay back the double payments.

Rossi's position, at this time, was to reimburse the Plan only for the June 1984 Additional Allowance payment of $679, since it was received during the same month of his Social Security lump sum receipt. Having been made aware of Rossi's position, Boston Gas reiterated its intention to recoup the duplicate payments. On June 14, 1985, the Plan notified Rossi that it would reduce his monthly pension check by 25% and charge him interest at a rate of 15% annually on the outstanding balance beginning June, 1985. On June 28, 1985, nearly one year after the Plan's discovery of the overpayment, a Senior Pension Trust Officer of Shawmut Bank notified Rossi of the same.

Pursuant to Article 12.021 of the summary description of employee's benefits, Rossi appealed the Plan's decision to recoup the overpayment through an offset of his monthly pension check. His attorney's June 28, 1985 request that the Plan's Joint Pension Committee hear and conduct a formal review of his appeal was granted on September 10, 1985.[7]

At the September 24, 1985 hearing, Rossi's attorney presented his position on the two issues for review; *viz.* whether there existed any provision in Rossi's pension plan for repayment to the Plan of any retroactive lump sum funds received from Social Security, and whether there existed any provision in Rossi's pension plan for reduction in his monthly pension for purposes of collecting the alleged overpayment.

By letter dated September 29, 1985, the Joint Pension Committee denied Rossi's appeal stating that Rossi was obligated to reimburse the Plan for Additional Allowance overpayment. In so holding, the Joint Pension Committee upheld the Plan's right to recoup the overpayment by offset.

ERISA provides in pertinent part:

A civil action may be brought—

(1) by a participant or beneficiary—

(A) . . .

(B) to recover benefits due him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

29 U.S.C. § 1132(a)(1)(B). Rossi filed the present suit pursuant to this authorization. The threshold question is whether either Boston Gas or the Plan, or both, violated ERISA with respect to the matters just recited.

Rossi here alleges that withholding 25% of his monthly pension check to recover an overpayment resulting from his lump sum receipt of retroactive Social Security Disability Benefits, and accruing interest on the unpaid balance, is unlawful and without au-

---

**7.** The Joint Pension Committee is one of four committees that determine questions of eligibility under the Plan. It is comprised of members appointed by both the Retirement Committee and by the union locals which are the collective bargaining representatives of employees covered by the plan.

thorization by the Plan. Further, he contends that the relevant language of the Plan is ambiguous. Finally, he claims that the Plan calculated the overpayment and the Additional Allowance arbitrarily and unlawfully. Rossi asserts that these actions violate 29 U.S.C. § 1053, the "non-forfeiture" provision of ERISA. In this action, Rossi seeks recovery of monies and a preliminary restraining order to prevent both defendants from interfering with his monthly pension. In addition, he requests that the Court interpret the applicable provisions of the Plan and determine the rights of the parties with respect to Rossi's monthly pension check and any alleged overpayment arrangement existing between the parties.

To date, Rossi has not voluntarily repaid any portion of the overpayment. Boston Gas continues to deduct 25% from Rossi's monthly pension check, and to accrue interest on the unpaid balance.

## II. ANALYSIS

Count I of the Amended Complaint charges a cause of action against Boston Gas in violation of ERISA. 29 U.S.C. § 1001 *et seq.* The count against Boston Gas is based on its alleged *de facto* representation of the Plan. Specific actions alleged to this effect include: Rossi's being awarded disability retirement by Boston Gas under the Plan, receiving correspondence written on Boston Gas' letterhead, directing telephone contact to Boston Gas' general business number, and other direct interaction with Boston Gas regarding Rossi's disability retirement. Further alleged evidence of this *de facto* representation includes the fact that responses to Rossi's attorney came from Boston Gas' General Counsel. Rossi alleges that even if the Plan is a separate legal entity, as stated in the Affidavit of Mary Kinnear, the two defendants here have acted as one entity throughout this matter.

Count II of the Amended Complaint charges a cause of action against defendant Boston Gas Company Union Employees' Pension Plan in violation of 29 U.S.C. § 1001 *et seq.* The count against this defendant is based on Rossi's having been a member of the Plan through his employer Boston Gas.

Counts I and II differ only with respect to the party named as the defendant. Both counts specifically allege that the actions of the defendants violate of 29 U.S.C. § 1053, the "non-forfeiture provision" of ERISA. Both counts also allege that there is no provision in the Plan for repayment of retroactive lump sum funds received from Social Security, or for reduction in monthly Disability Retirement Allowance for purposes of collection of alleged overpayment. Finally, both counts allege that the calculation of the alleged overpayment and the estimation of Rossi's Additional Allowance were made in an arbitrary and unlawful manner.

To the extent the facts have been stipulated, the issues for this Court to decide result from the divergent interpretations by the parties of the established facts and applicable Plan provisions. Since ERISA does not set out the appropriate standard of review for actions under 29 U.S.C. § 1132(a)(1)(B), federal courts have adopted both deferential and *de novo* standards of review. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 107-08, 109 S.Ct. 948, 952-953, 103 L.Ed.2d 80 (1989). The First Circuit has interpreted *Firestone* as requiring a *de novo* standard of review for cases arising under 29 U.S.C. § 1132(a)(1)(B), except where a different level of scrutiny is indicated in the benefit plan itself. *Allen v. Adage Inc.,* 967 F.2d 695, 697 (1st Cir.1992). The Supreme Court held that an indication warranting deference exists where "the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber v. Bruch,* 489 U.S. at 115, 109 S.Ct. at 956. Rossi availed himself of just such an administrative review procedure.

In compliance with ERISA and *Firestone,* Article 12 of the Plan provides authority for administrative review of claims. Unfortunately, at present it is immaterial whether this Court applies a deferential or *de novo* standard of review since, having considered all of the materials properly before it, this Court rules that Rossi's claim must fail on procedural grounds.

## A. Proper Party to Be Sued

■ At the hearing on April 3, 1991, this Court gave Rossi one month to respond to Boston Gas' affirmative defense that the Plan is a separate entity and that, therefor, Boston Gas is not the proper defendant. However, Rossi has failed to present any convincing evidence to rebut that defense.

Under ERISA, "[e]very employee benefit plan shall be established and maintained pursuant to a written instrument. Such instrument shall provide for one or more named fiduciaries who jointly or severally shall have authority to control and manage the operation and administration of the plan." 29 U.S.C. § 1102(a)(1). In accordance with ERISA, the Plan here sets forth its benefit plan in a written instrument. Such a "summary plan description" of an employee benefit plan only imposes responsibilities on the plan administrator. *Stuart v. Metropolitan Life Insurance Co.*, 664 F.Supp. 619, 621 (D.Me.1987), *aff'd*, 849 F.2d 1534 (1st Cir. 1988), *cert. denied*, 488 U.S. 968, 109 S.Ct. 496, 102 L.Ed.2d 533 (1988). As defined by ERISA, the term "administrator" means "the person specifically so designated by the terms of the instrument under which the plan is operated." 29 U.S.C. § 1002(16)(A)(i).

Article 12 of the Plan satisfies this ERISA requirement by setting forth the administration of the Plan, including *inter alia* the identity of those persons or entities who are responsible for the administration of the Plan and have a fiduciary duty thereunder, and the procedure for handling claims. Where such designation is lacking, ERISA defines an administrator as the Plan sponsor. 29 U.S.C. § 1002(16)(A)(ii). The Plan sponsor is defined as the participant's employer. 29 U.S.C. § 1002(16)(B). Thus, had the summary plan description not designated an administrator, Boston Gas would likely have been a proper party to this action.

■ Case law further defines this area for the Court. In determining whether an employer is a proper party to an ERISA action, the court must look first to whether an administrator has been appointed. *Reynolds v. Bethlehem Steel Corp.*, 619 F.Supp. 919, 928 (D.Md.1984). If so, the administrator, rather than the employer, is the proper party, "unless the employer has controlled or influenced the administrator's decisions in regard to awarding pension benefits." *Id.* (citations omitted). In *Reynolds*, where an administrator had been appointed by the plan, it was deemed the responsibility of the plaintiff to show that the employer influenced or controlled the Board's decision through an agency relationship. *Id.* at 928–29 (citations omitted).

In the case at hand, the Plan meets the standard set forth by ERISA. It has an administrator in its Retirement Committee, established pursuant to its Article 12.01. This committee consists of management persons appointed by the Board of Directors of Boston Gas and is responsible for the general administration of the Plan. The Plan also has a Joint Pension Committee pursuant to Article 12.02, formed to determine questions of eligibility. This committee comprises members appointed by the Retirement Committee and by union locals. Article 12.03 requires *inter alia* that members of both committees discharge their duties under the Plan solely in the interest of employees and beneficiaries. Rossi fails to show that Boston Gas controlled or influenced the Plan's decision regarding his benefit determination.

In accordance with ERISA, Article 12.06 of the Plan explains the Plan's claim filing process and its review procedures. 29 U.S.C. § 1133. Furthermore, Article 11.03 of the Plan specifically eschews liability on the part of Boston Gas for any claims arising under the Plan's provisions. As is also required by ERISA, the Plan keeps its assets separate and distinct from Boston Gas, as set forth in Article 11.04. Having met ERISA requirements, it is apparent that the Plan is a separate legal entity. The mere fact that correspondence took place on the Boston Gas letterhead does not obligate Boston Gas to defend this action. Boston Gas is not the proper party to this alleged cause of action since the Plan may be sued as a separate and distinct entity from the employer. 29 U.S.C. § 1132(d)(1).

The Ninth Circuit "has held that 'the only causes of action [a plaintiff] has are those

provided by ERISA. ERISA permits suits to recover benefits only against the Plan as an entity....'" *Madden v. ITT Long Term Disability Plan for Salaried Employees,* 914 F.2d 1279, 1287 (9th Cir.1990), *cert. denied,* 498 U.S. 1087, 111 S.Ct. 964, 112 L.Ed.2d 1051 (1991) (quoting *Gelardi v. Pertec Computer Corp.,* 761 F.2d 1323, 1324–25 [9th Cir.1985] [citations omitted] ). This Court, agreeing with the wisdom of the Ninth Circuit, rules that the Plan is the proper party to be sued. Therefore, no cause of action exists against Boston Gas and accordingly, they are not obligated to defend this action.

## B. What Now?

■ As to the Plan, this Court has not been provided with sufficient evidence that the Plan was properly served with the Amended Complaint. The record is void of any notice of service. Moreover, the Plan has filed neither an Answer nor any other responsive pleading in this Court, and no attorney has come forward as its counsel. A defendant must be given notice and an opportunity to respond before a case is disposed of on the merits as against that party. *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 395 U.S. 100, 108–12, 89 S.Ct. 1562, 1568–1570, 23 L.Ed.2d 129 (1969) (despite stipulation by subsidiary that parent and subsidiary were one company, district court erred in entering judgment against parent where parent was not a party to the suit and where trial court made no finding that parent and subsidiary were one entity). This is so even where the party in question is present in the case in some other capacity. *Bender v. Williamsport Area School District,* 475 U.S. 534, 547–49, 106 S.Ct. 1326, 1334–1335, 89 L.Ed.2d 501 (1986), *reh'g denied* 476 U.S. 1132, 106 S.Ct. 2003, 90 L.Ed.2d 682 (1986). "It is elementary that one is not bound by a judgment *in personam* resulting from litigation in which he is not designated or to which he has not been made a party by service of process." *Zenith Radio Corp.,* 395 U.S. at 110, 89 S.Ct. at 1569 (citing *Hansberry v. Lee,* 311 U.S. 32, 40–41, 61 S.Ct. 115, 117–118, 85 L.Ed. 22 [1940] ). This has been the "consistent Constitutional rule." *Zenith Ra-*

dio Corp., 395 U.S. at 110, 89 S.Ct. at 1569. *See Martin v. Wilks,* 490 U.S. 755, 761–62, 109 S.Ct. 2180, 2184–2185, 104 L.Ed.2d 835 (1989) (the rule is consistent with the tradition of affording every person his day in court). "Failure to give notice violates 'the most rudimentary demands of due process of law'". *Peralta v. Heights Medical Center, Inc.,* 485 U.S. 80, 84, 108 S.Ct. 896, 898, 99 L.Ed.2d 75 (1988) (citations omitted). *See also World–Wide Volkswagon Corp. v. Woodson,* 444 U.S. 286, 291, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980); *Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 901, 47 L.Ed.2d 18 (1976); *Zenith Radio Corp. v. Hazeltine Research Inc.,* 395 U.S. 100, 110, 89 S.Ct. 1562, 1569, 23 L.Ed.2d 129 (1969); *Pennoyer v. Neff,* 95 U.S. 714, 733, 24 L.Ed. 565 (1877).

■ Without personal jurisdiction over a defendant, this Court lacks power to adjudicate a claim or obligation of a person. *General Contracting & Trading Co. v. Interpole, Inc.,* 899 F.2d 109, 114 (1st Cir.1990).[8] Without adequate representation that the Plan has been served, or that service has been adequately attempted, this Court rules that the Plan is not a party properly before this Court despite the fact that it was named as a defendant in the Amended Complaint. The Plan is therefore not a party to this action. *Carta v. Town of Fairfield,* No. 91–2248, 1992 WL 69332, at \*3, 1992 U.S.App. LEXIS 28819, at \*10–\*11 (1st Cir. Apr. 8, 1992), citing *Northwestern National Casualty Co. v. Global Moving and Storage, Inc.,* 533 F.2d 320, 323 (6th Cir.1976) ("The trial court erred in entering judgment in favor of [a "defendant"] before determining that it had the requisite personal jurisdiction.").

Fed.R.Civ.P. 4(j) states, in pertinent part:

"if a service of the ... complaint is not made upon a defendant within 120 days after the filing of the complaint and the ... [plaintiff] cannot show good cause why such service was not made within that period, the action shall be dismissed as to that defendant without prejudice upon the court's own initiative...."

---

8. Furthermore, it is the responsibility of the plaintiff, and not the Court, to see the relevant

parties served with pleadings, and to submit proof thereof to this Court. Fed.R.Civ.P. 4(d).

Consequently, Rossi's claim against the Plan is subject to dismissal pursuant to Fed. R.Civ.P. 4(j). *Alvarado–Morales v. Digital Equipment Corp.*, 843 F.2d 613, 615 (1st Cir.1988).

In this case, however, it would be unjust in the extreme to dismiss Rossi's claim entirely at this juncture. The Plan may be legally distinct from Boston Gas but the two are closely intertwined and justice here requires that Rossi have a chance to press his important claim against the proper party.

Accordingly, Rossi shall have 120 days from the date of this memorandum to perfect proper service on the Plan. If he does not, this action shall be dismissed. In any event, the action shall then be dismissed as against Boston Gas.